IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PAULA LONGORIA,                          §
                                         §
            Plaintiff,                   §
                                         §
V.                                       §          No. 3:14-cv-3111-L
                                         §
COUNTY OF DALLAS, TEXAS and              §
RICHIE LADONE WIMBISH,                   §
                                         §
            Defendants.                  §

## MEMORANDUM OPINION AND ORDER

Defendant Richie Ladone Wimbish has filed a Motion to Quash, Motion for a

Protective Order, and Motion to Abate Case, pursuant to Federal Rule of Civil

Procedure 26(c), seeking to quash Plaintiff Paula Longoria's Notice of Intent to Take

the Deposition of Richie Ladone Wimbish scheduled for June 22, 2015 and for the

issuance of a protective order preventing such deposition until a related criminal case

pending against Wimbish is concluded. *See* Dkt. No. 22. Wimbish also seeks abatement

of this case pending resolution of the criminal case. *See id.* Wimbish requests, in the

alternative, that, should the Court not issue a protective order quashing the deposition

notice, the Court "give the parties to this Lawsuit the proper areas that may be covered

in the deposition and areas that may not be covered in the deposition to protect

Defendant Wimbish's Fifth Amendment privilege in light of the pending parallel

Criminal Case." *Id.* at 2. That is, Wimbish urges that "the Court should order that the

deposition questions be significantly narrowed to protect Defendant Wimbish's Fifth

-1-

Amendment privilege, and advise the parties to the Lawsuit as to what areas of questions will be permitted, and which are protected by Defendant Wimbish's Fifth Amendment privilege." *Id.* at 4.

United States District Judge Sam A. Lindsay referred this motion to the undersigned United States magistrate judge for determination. *See* Dkt. No. 24.

Plaintiff has filed a response, *see* Dkt. No. 26, and Wimbish has filed a reply, *see* Dkt. No. 27. Defendant Dallas County also "concur[s] with Defendant Wimbish's requested abatement of this Lawsuit pending resolution of the Criminal Case pending against Defendant Wimbish." Dkt. No. 22 at 11.

For the reasons explained below, the Court DENIES Defendant Richie Ladone Wimbish's Motion to Quash and Motion for a Protective Order [Dkt. No. 22] and GRANTS his Motion to Abate Case [Dkt. No. 22].[1]

## Background

Plaintiff alleges that she was a incarcerated in Dallas County Jail as a pre-trial detainee when she was sexually assaulted by Wimbish, a guard and employee of Defendant Dallas County at the time. *See* Dkt. No. 1. Plaintiff alleges that, sometime between September 1, 2012 and September 18, 2012, Wimbish escorted Plaintiff out of her cell and to a mattress room in the West Tower Jail Facility and engaged in

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

sexual intercourse with Plaintiff without her consent. *See id.* Plaintiff filed this action against the Dallas County and Wimbish, alleging a 42 U.S.C. § 1983 claim against Dallas County and a claim for Intentional Infliction of Emotional Distress against Wimbish. *See id.*

Wimbish also has been indicted in state court in Cause No. F-1318455 for the offense of improper sexual activity with a person in custody in violation of Texas Penal Code § 39.04 (the "Criminal Case"). *See* Dkt. No. 1 at 3; Dkt. No. 22 at 2; Dkt. No. 26 at 2. That criminal proceeding remains pending. *See* Dkt. No. 22 at 1; Dkt. No. 26 at 2.

Plaintiff served a Notice of Intent to Take the Deposition of Richie Ladone Wimbish, scheduling the deposition for June 22, 2015. *See* Dkt. No. 23 at 7-8. In response, Wimbish filed this motion.

## Legal Standards and Analysis

I.   <u>The Court will not issue a protective order to prevent or limit the deposition.</u>

Under Federal Rule of Civil Procedure 26(c), the Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See* FED. R. CIV. P. 26(c)(1). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l,* 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). The party resisting discovery must show specifically how each request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel*

& *Apfel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). And a party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005). The Court has broad discretion in determining whether to grant a motion for a protective order, *see Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir. 1985), where "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery," *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984).

Wimbish seeks an order quashing the notice of his deposition and a protective order to prevent his deposition until his Criminal Case is concluded. Citing case law from outside this jurisdiction, Wimbish contends that "[g]ood cause exists for the Court to protect Defendant Wimbish by quashing his deposition," where "Defendant Wimbish will be seriously harmed if he testifies in this Lawsuit when the parallel Criminal Case is pending with identical factual allegations"; where "Defendant Wimbish will be required to invoke the Fifth Amendment privilege in this Lawsuit pending resolution of the Criminal Case"; and where "Defendant Wimbish subjects himself to serious harm, in that he risks waiver of the Fifth Amendment privilege if he answers questions that relate in any way to the one cause of action against Defendant Wimbish – Intentional Infliction of Emotional Distress as a result of the Alleged Incident, including his employment at the jail, or any actions involving the Plaintiff or any other prisoners." Dkt. No. 22 at 5-6. Wimbish also notes that "Plaintiff has contended that Defendant Wimbish can properly answer certain questions such as the layout of the

jail," but Wimbish asserts that "[s]uch questions are inappropriate questions for Defendant Wimbish, who has not worked at the jail for over two years, and would have to rely upon his memory to answer those questions"; that "[h]is testimony would not be the best evidence with regard to, for example, the layout of the jail"; and that "Plaintiff would get the best evidence of the layout of the jail from the County's plans and specifications of the facility, or by Plaintiff's personal observations on a jail visit." *Id.* at 7 (citing FED. R. EVID. 1002).

Plaintiff responds that "Wimbish cannot have a deposition quashed by preemptively invoking his Fifth Amendment right against self-incrimination," and, "[i]nstead, Wimbish must appear at his deposition and, through his counsel, invoke the Fifth Amendment in response to individual questions," and then, "[a]t plaintiff's request, the Court may later rule on the propriety of Wimbish's invocation of the Fifth Amendment." Dkt. No. 26 at 1. Plaintiff contends that, "[t]o rule otherwise delegates to Wimbish the power to decide when and whether the self-incrimination privilege applies, a power reserved to the Court" and that "[t]his procedure is also consistent with a plaintiff's ability in a civil action to have the jury draw an adverse inference from a defendant's invocation of the Fifth Amendment," where, "[w]ithout a specific question and a specific refusal to answer that question, no specific inference could be drawn by the jury." *Id.* Plaintiff argues that "Wimbish has cited no authority for the proposition that by claiming that he intends to invoke the Fifth Amendment, a deponent may have an entire deposition quashed" and further contends that Wimbish's "arguments are, in reality, relevance and 'best evidence' objections, objections that

might be entertained at trial but would not be a basis for instructing a witness not to answer during a deposition" and that "[t]hat there may be other possible sources for information is also not a basis for quashing the deposition of a named defendant." *Id.* at 4, 5. According to Plaintiff, "[w]hile there may indeed be specific questions that Wimbish cannot answer without possible incriminating himself, there are obviously many questions that would not do so, including the examples Wimbish gives in his motion." *Id.* at 5.

Wimbish replies that the decision by the United States Court of Appeals for the Fourth Circuit that both parties repeatedly point to is distinguishable because Wimbish "only has one allegation against him for Intentional Infliction of Emotional Distress" and "[h]e has fully answered the Complaint and responded to a Request for Production." Dkt. No. 27 at 4. Wimbish further asserts that "[a]nswering any deposition questions about the only allegation against him in this case, including his employment at the jail, or any actions involving the Plaintiff or any other prisoners creates a serious risk of waiver, an argument Plaintiff completely ignores in her Response"; that "Wimbish asserting his Fifth Amendment privilege on all questions that relate to the one cause of action against him which has identical facts to the facts that are involved in the parallel criminal case gives the Court sufficient information to determine if Defendant Wimbish is properly invoking his Fifth Amendment privilege"; and that, "[i]f Defendant Wimbish begins answering questions about the jail, his duties in the jail, the Plaintiff or anything else to do with the civil or criminal actions against him, it will be impossible to determine the fine line where the questions

invade Defendant Wimbish's Fifth Amendment rights," where, "[n]o matter how generic the questions are on any of these topics, the Plaintiff will be able to claim that Defendant Wimbish 'opened the door' and waived his right to remain silent and must continue answering questions." *Id.* at 4, 5.

The Court cannot accept Wimbish's arguments to quash, preclude, or prospectively limit his deposition for largely the reasons that Plaintiff offers in response. Although the question of whether the abate the entire case pending the Criminal Case's resolution requires a different analysis that the Court takes up below, the relevant, governing case law from the United States Court of Appeals for the Fifth Circuit as well as the United States Supreme Court clearly precludes the protective order that Defendant seeks directed to his deposition.

The Fifth Circuit has recently made clear that "a party may invoke the privilege against self-incrimination in a civil proceeding" and "may invoke the Fifth Amendment privilege during the discovery process to avoid answering questions at a deposition, responding to interrogatories or requests for admissions, or to produce documents." *Davis-Lynch, Inc. v. Moreno*, 667 F.3d 539, 547 (5th Cir. 2012) (footnotes omitted). The Fifth Circuit has further noted that "[t]he Supreme Court has cautioned that the Constitution limits the imposition of any sanction which makes assertion of the Fifth Amendment privilege costly." *Id.* (footnote and internal quotation marks omitted). "Given this consideration – and because all parties should have a reasonable opportunity to litigate a civil case fully – courts should seek out ways to permit as much testimony as possible to be presented in the civil litigation, despite the assertion

of the privilege." *Id.* (footnote and internal quotation marks omitted). "In addition, [the Fifth Circuit] has held that, when there are competing interests posed by an invocation of the Fifth Amendment, a court should measure the relative weights of the parties' competing interests with a view toward accommodating those interests, if possible." *Id.* (footnote and internal quotation marks omitted).

But, "while a person may refuse to testify during civil proceedings on the ground that his testimony might incriminate him ... his refusal to testify may be used against him in a civil proceeding." *Hinojosa v. Butler*, 547 F.3d 285, 291 (5th Cir. 2008) (internal quotation marks omitted). "Thus, although a jury in a criminal case is not permitted to draw adverse inferences based on a defendant's invocation of his Fifth Amendment rights, it is well-settled that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Id.* (internal quotation marks omitted).

The Fifth Circuit has also held that "[a] blanket refusal to answer questions at deposition on the ground that they are privileged is an improper invocation of the fifth amendment, irrespective of whether such a claim is made by a plaintiff, defendant, or a witness." *S.E.C. v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981) (internal quotation marks omitted). The Fifth Circuit "has held that such a blanket assertion of the privilege is insufficient to relieve a party of the duty to respond to questions put to him, stating that even if the danger of self-incrimination is great, (the party's) remedy is not to voice a blanket refusal to produce his records or testify. Instead, he must present himself with his records for questioning, and as to each

question and each record elect to raise or not to raise the defense." *Id.* (internal quotation marks omitted). "Requiring a party to object with specificity to the information sought from him permits the district court to rule on the validity of his claim of privilege. A party is not entitled to decide for himself whether he is protected by the fifth amendment privilege. Rather, this question is for the court to decide after conducting a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore, whether or not the privilege is well-founded." *Id.* (internal quotation marks omitted).

These governing authorities preclude the relief that Wimbish seeks in his Motion to Quash and Motion for a Protective Order. Wimbish cannot be relieved from sitting for his deposition altogether and invoking his Fifth Amendment privilege only where appropriate. His concerns about waiver have already been considered by the courts for decades and found wanting as grounds to prevent a deposition entirely – where, "even if the danger of self-incrimination is great, (the party's) remedy is not to voice a blanket refusal to ... testify," but. "[i]nstead, he must present himself with his records for questioning, and as to each question ... elect to raise or not to raise the defense." *Id.* at 668 (internal quotation marks omitted). In short, where, as here, "a deposition is sought, the availability of the privilege is not a ground for vacating the notice of the deposition," but, rather, "[t]he proper procedure is for the deponent to attend the deposition, to be sworn under oath, and to answer those questions he or she can answer without running a risk of incrimination," and, "[i]n this way a record can be made and the court can determine whether particular questions asked did entitle

the deponent to claim the privilege." 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, &

RICHARD L. MARCUS, FEDERAL PRAC. & PROC. § 2018 (3d ed.).

Wimbish alternatively "seeks an order denying Plaintiff the right to ask

Defendant Wimbish any deposition questions in any way related to: 1) Defendant

Wimbish's employment at the jail; 2) any of his actions related to the Plaintiff; 3) any

of his actions related to any prisoner; or 4) the layout of the jail." Dkt. No. 22 at 9.

According to Wimbish, "[s]hould the Court not set out permissible areas of questioning

of Defendant Wimbish by the Plaintiff, any answer Defendant Wimbish gives to any

relevant question will allow the Plaintiff to claim that Defendant Wimbish waived his

Fifth Amendment right not to answer the rest of the questions posed to him by the

Plaintiff." *Id.*; *see also* Dkt. No. 27 at 5-6.

The Court cannot agree with this proposition. The Fifth Circuit has already held

that, "[e]ven where a party has a legitimate claim of privilege with respect to certain

questions or lines of inquiry, that person may not be entitled to invoke his privilege to

remain totally silent. Only where the court finds that he could legitimately refuse to

answer essentially all relevant questions, because of the threat of incrimination from

any relevant questioning is a person totally excused from responding to relevant

inquiries. Otherwise, a person is entitled to invoke the privilege (o)nly as to genuinely

threatening questions...." *First Fin.*, 659 F.2d at 668-69 (internal quotation marks

omitted). "Therefore, a blanket invocation of the fifth amendment privilege is

insufficient to relieve a civil litigant of the responsibility to answer questions put to

him during the civil discovery process and to claim the privilege with respect to each

inquiry." *Id.* at 669.

Moreover, as Plaintiff notes, Plaintiff may be permitted to have the jury draw an adverse inference from Wimbish's invocation of the Fifth Amendment, and precluding such broad areas from questioning effectively precludes both the possible availability of such an inference as to a specific question and a specific refusal to answer that question as well as the required particularized inquiry in connection with each specific area that the questioning party seeks to explore, by way of specific questions, whether or not the privilege is well-founded. The Court agrees with Plaintiff that, if the entire case is not abated, "[t]he proper thing to do is to allow the deposition to take place, have Wimbish invoke his Fifth Amendment privilege in response to particular questions and, if the parties dispute such an invocation, present those issues to the Court." Dkt. No. 26 at 6.

Finally, Plaintiff correctly asserts that Wimbish's arguments that he is not the best source for certain information does not warrant a Rule 26(c) protective order against deposition questioning on those topics. Under Federal Rule of Civil Procedure 30(c)(2), such a Federal Rule of Evidence 1002 or "best evidence" objection is not a proper ground not to answer a question at a deposition. And the Court further finds that Wimbish has not shown under Federal Rule of Civil Procedure 26(b)(2)(C)(iii) and 26(c)(1) that questioning on, for example, the layout of the jail and mattress room presents an undue burden on Wimbish or, under Federal Rule of Civil Procedure 26(b)(2)(C)(I), that any such questioning of Wimbish – a named defendant – should be precluded as unreasonably cumulative or duplicative or as obtainable from some other

source that is more convenient, less burdensome, or less expensive.

The Court denies Wimbish's motions to quash Plaintiff's Notice of Intent to Take the Deposition of Richie Ladone Wimbish and for the issuance of a protective order specifically directed to preventing Wimbish's deposition until the Criminal Case pending against Wimbish is concluded.

II.   <u>The Court will abate this case pending resolution of the criminal case.</u>

"In addition to quashing the Deposition Notice, Defendant Wimbish asks the Court to stay the entire case pending resolution of the Criminal Case, to avoid substantial and irreparable prejudice." Dkt. No. 22 at 7.

Plaintiff opposes this request, asserting that "[i]t is the rule, rather than the exception that civil and criminal cases proceed together"; that "Wimbish has no 'right' to a stay of this case while his criminal case is pending," where, "[t]he Supreme Court has established that there exists no general constitutional, statutory, or common law prohibition against the prosecution of parallel criminal and civil actions, even where such actions proceed simultaneously"; that [t]he complete stay of a pending civil case until a related criminal case is completed is an extraordinary remedy"; and that "[o]ne reason for this is that a complete stay is tantamount to a defendant's blanket assertion of the Fifth Amendment, which is itself improper." Dkt. No. 26 at 6-7 (internal quotation marks omitted). Plaintiff contends that, "[a]ccordingly, as the Court rejects Wimbish's attempt to quash the deposition based on a blanket invocation of the Fifth Amendment, the Court should also reject staying the case on the same basis." *Id.* at 7.

But the Fifth Circuit has also held that, "[c]ertainly, a district court may stay

a civil proceeding during the pendency of a parallel criminal proceeding." *United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983). And, as Plaintiff acknowledges, the Fifth Circuit has held that, "[i]n special circumstances, ... a district court should stay one of the proceedings pending completion of the other to prevent a party from suffering substantial and irreparable prejudice." *First Fin.*, 659 F.2d at 668 (internal quotation marks omitted). In *S.E.C. v. First Financial Group of Texas, Inc.*, the Court of Appeals noted that, in another case, the Fifth Circuit "held that the district court erred by failing to stay a civil libel action pending the outcome of a related criminal investigation and potential prosecution or the running of the applicable statute of limitations after the plaintiff had validly claimed his fifth amendment privilege in response to the defendant's discovery requests and had sought a protective order staying the civil suit" and noted that, in the *First Financial* case, "appellants neither sought a protective order from the district court nor objected to specific information sought by the SEC." *Id.* (citing *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084 (5th Cir. 1979)). Here, in contrast, Wimbish is seeking a protective order.

"The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, which includes authority to control the scope and pace of discovery." *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990). "The party seeking a stay bears the burden of justifying a delay tagged to another legal proceeding." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983).

Judge Lindsay has noted in this context that, "[i]n deciding whether to grant a request to stay the civil side of parallel civil/criminal proceedings: 'Judicial discretion

and procedural flexibility should be [used] to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. In some situations it may be appropriate to stay the civil proceeding. In others it may be preferable for the civil suit to proceed – unstayed.'" *Lewis v. City of Garland*, No. 3:05-cv-683-L, 2005 WL 2647956, at *1 (N.D. Tex. Oct. 14, 2005) (quoting *S.E.C. v. Mutuals.com, Inc.*, No. 3:03-cv-2912-D, 2004 WL 1629929, at *2 (N.D. Tex. July 20, 2004)). "Courts in this District consider the following factors to determine whether special circumstances exist: (a) the extent of the overlap between the issues in the criminal case and those in the civil case; (b) the status of the criminal case, including whether the defendant has been indicted; (c) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by the delay; (d) the private interests of and the burden on the defendant; (e) the interests of the courts; and (f) the public interest." *Janvey v. Alguire*, Nos. 3:09-cv-724-N & 3:10-cv-477-N , 2012 WL 11956130, at *1 (N.D. Tex. Aug. 30, 2012).

In support of his request to abate the entire case pending resolution of the Criminal Case against Wimbish in state court, Wimbish asserts that, "[w]ith only one cause of action against Defendant Wimbish in this Lawsuit, the allegations of which are identical to the allegations in the Criminal Case, Defendant Wimbish will suffer irreparable harm if the deposition proceeds as scheduled," where "Wimbish will have no alternative but to protect himself by invoking the Fifth Amendment privilege for every relevant question related to Defendant Wimbish's employment, any of his actions related to Plaintiff or any other prisoner at the jail, or risk waiver of his Fifth

Amendment privilege," and "[t]hus, a stay of this Lawsuit is imperative to avoid substantial and irreparable prejudice to Defendant Wimbish." Dkt. No. 22 at 8.

After acknowledging the governing authority and factors set forth above, Plaintiff responds that, although she "acknowledges there is overlap with the criminal case, and that case is still pending," "[a]ll the remaining factors, however, support denial of a stay here." Dkt. No. 26 at 8. According to Plaintiff:

· "Longoria definitely has an interest in proceeding expeditiously with her case. As this Court has recognized, a civil plaintiff has an interest in the prompt resolution of [her] claims and in obtaining discovery while information is still fresh in witnesses' minds."

· "Wimbish's private interests will not be significantly impacted by allowing this case to proceed like any other civil case. He will be able to invoke his Fifth Amendment privilege against self-incrimination while the criminal case is pending and otherwise will be treated like any other civil litigant."

· "Both the interests of the courts and the public support denial of the stay, as both have an interest in the expeditious resolution of this case. There is no way to know how long a stay would last, given that no trial has been set in the criminal case and there could be further delay resulting from appeals and even a collateral habeas proceeding after a possible conviction. Given the allegations Longoria makes in her Complaint regarding ongoing civil rights violations and inadequate protections for inmates in the Dallas County Jail, the public (in particular the citizens of Dallas County) have an interest in seeing that justice

-15-

is done and that problems and deficiencies at the Jail be brought to light. Allowing an indefinite stay of proceedings while a criminal case is pending would not be in the public interest."

*Id.* (internal quotation marks omitted). Plaintiff maintains that "Wimbish has identified no 'special circumstances' that justify the 'extraordinary remedy' of abating this case while his criminal proceeding is pending, and the balance of interests weighs in favor of allowing this case to proceed." *Id.*

Wimbish replies that "Plaintiff's Response only highlights the need for a stay of this case until the parallel criminal case pending against Defendant Wimbish is resolved," where "Defendant Wimbish has been indicted and has a felony criminal case pending against him with issues identical to the issues in this case"; where, "[i]n this civil case, Defendant Wimbish is accused of causing the Plaintiff emotional distress by allegedly having sex with Plaintiff while she was a prisoner in the Dallas County Jail"; and where "[t]he parallel criminal case pending against Defendant Wimbish involves the exact same parties to the alleged incident in question and the same facts alleged in this civil case." Dkt. No. 27 at 1-2.

Wimbish asserts that the facts here, measured against the relevant factors, weigh in favor of a stay: "1) the extent to which the issues in the criminal case overlap with those presented in the civil case *(exactly the same in this case)*; 2) the status of the criminal case, including whether the defendant has been indicted *(Defendant Wimbish has been indicted and is awaiting trial)*; 3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to plaintiff caused by the delay

*(the Plaintiff has demonstrated no prejudice by any delay)*; 4) the private interest of and burden on the defendant *(Defendant Wimbish has clear Fifth Amendment rights)*; 5) the interests of the Court; and 6) the public interest *(Plaintiff has demonstrated no compelling public interest)*." *Id.* at 2 (emphasis in original). Wimbish notes that Plaintiff admits that Wimbish meets the first factor and then asserts that he also "meets the second criteria, as he has been indicted and a parallel felony criminal case is pending where Plaintiff is the complaining witness." *Id.* at 2-3. Wimbish contends that, "[o]n the remaining factors, the balance clearly tips in favor of protecting Defendant Wimbish's Fifth Amendment privilege" and that, although "Plaintiff argues that her need to proceed expeditiously in this case outweigh Defendant Wimbish's need to protect himself from self-incrimination – because granting a stay would be 'allowing an indefinite stay of proceeding while a criminal case is pending would not be in the public interest'" – "Wimbish does not request an indefinite stay, only a stay through the conclusion of the criminal proceeding." *Id.* at 3 (quoting Dkt. No. 26 at 8). Wimbish urges that "[t]he Court should, therefore, grant the stay of this case until the criminal case against Defendant Wimbish is resolved to allow Defendant Wimbish to protect his Fifth Amendment right against self-incrimination." *Id.*

Turning to the factors to which courts look in these situations, as to the first factor, there is no dispute that Wimbish has been indicted in the pending Criminal Case and that there is significant overlap between the issues in the Criminal Case and those in this civil case. Court have noted that "self-incrimination is more likely if there is significant overlap." *S.E.C. v. AmeriFirst Funding, Inc.*, No. 3:07-cv-1188-D, 2008

WL 866065, at *2 (N.D. Tex. Mar. 17, 2008). This overlap of issues weighs in favor of a stay.

As to the second factor focusing on the status of the Criminal Case, "[a] stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct." *AmeriFirst*, 2008 WL 866065, at *3 (internal quotation marks omitted). This is so "for two reasons: first, the likelihood that a defendant may make incriminating statements is greater after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *Heller Healthcare Fin., Inc. v. Boyes*, No. 3:00-cv-1335-D, 2002 WL 1558337, at *3 (N.D. Tex. July 15, 2002) (internal quotation marks omitted); *accord Librado v. M.S. Carriers, Inc.*, No. 3:02-cv-2095-D, 2002 WL 31495988, at *2 (N.D. Tex. Nov. 5, 2002) (noting that "Texas law recognizes a right to a speedy trial"). The status of the pending Criminal Case in which Wimbish, a defendant here, is indicted weighs in favor of a stay.

As to the third factor, "[i]n ruling on a motion for stay, the court should also weigh the private interests of the plaintiff in proceeding expeditiously against the prejudice that will be caused by the delay that will result from the stay." *Id.* Judge Lindsay has noted that, "[i]n the context of a civil enforcement suit, the plaintiff's interest and the public interest are intertwined" and that, "[g]enerally, a civil plaintiff has an interest in the prompt resolution of [her] claims and in obtaining discovery while information is still fresh in witnesses' minds." *Lewis*, 2005 WL 2647956, at *3 (internal quotation marks omitted). Here, Plaintiff opposes a stay but has not pointed

to any prejudice that she will face beyond adopting these general observations. In a similar circumstance, United States District Judge Sidney A. Fitzwater found that this factor weighed in favor of a stay where, because "Texas law recognizes a right to a speedy trial," "consideration of the burden to be placed on the plaintiffs does not weigh heavily against a stay" and where, although Judge Fitzwater "recognize[d] that, even if convicted, [the key witness's] Fifth Amendment privilege may continue throughout the pendency of his direct appeal," "[b]ecause the issuance and duration of a stay are committed to the court's sound discretion, and because imposition of a stay lasting throughout the duration of [the witness's] direct appeal (if he is convicted) would likely be unduly burdensome to plaintiffs' interests, the court contemplates that the stay granted today will remain in effect only through sentencing" and that, "[i]f he is acquitted, the stay will terminate upon the return of a not guilty verdict." *Librado*, 2002 WL 31495988, at *2. The Court similarly finds here that any stay should last only through resolution of the pending Criminal Case in the state trial court. With that understanding, this factor weighs slightly in favor of a stay.

As to the fourth factor, the private interests of and the burden on the defendant, the Court notes that the other defendant, Dallas County, supports abatement of this case pending resolution of the Criminal Case against Wimbish. As such, the Court "discerns no substantial prejudice to the other defendant[] from granting of a stay." *Heller*, 2002 WL 1558337, at *3. As for Wimbish himself, he asserts that he has a clear need to protect himself from self-incrimination through providing deposition testimony. The Fifth Circuit has noted that "[t]he very fact of a parallel criminal proceeding ... did

not alone undercut [a party's] privilege against self-incrimination, even though the pendency of the criminal action forced him to choose between preserving his privilege against self-incrimination and losing the civil suit." *Little Al*, 712 F.2d at 136 (internal quotation marks omitted). And Wimbish has emphasized in his motion briefing that he "has fully cooperated to the extent he could do so without incriminating himself in the Criminal Case, by answering the Complaint and responding to a Request for Production in this Lawsuit, but is protecting himself by asserting the Fifth Amendment privilege with regard to the Deposition Notice." Dkt. No. 22 at 6-7; *see also* Dkt. No. 27 at 4. But, although focused on his deposition testimony, Wimbish does contend that he "faces a conflict between asserting his Fifth Amendment rights and defending the civil action," which "may be largely, if not completely, eliminated by granting a stay." *Heller*, 2002 WL 1558337, at \*3. And, in support of his request to abate the entire case, Wimbish asserts that he "will suffer irreparable harm if the deposition proceeds as scheduled." Dkt. No. 22 at 8. And, as explained above in connection with the third factor, the Court "discerns no substantial prejudice to plaintiffs from granting a partial stay." *Librado*, 2002 WL 31495988, at \*3. This fourth factor weighs in favor of a stay.

Finally, as to the interests of the courts and the public, Plaintiff's arguments focus on an indefinite stay, but, as discussed above, a limited stay through the conclusion of sentencing or a not-guilty verdict in the state court Criminal Case should mitigate these concerns. The Court also finds that granting a stay will not unduly interfere with the Court's management of its docket, where the case, filed less than a year ago, is still in its early stages, *see* Dkt. No. 19, and the case can be administrative

closed during its abatement, such that the Court's interests do not weigh against a stay. And the Court finds that the interests of the public that Plaintiff identifies do not weigh strongly against a stay of the limited duration that the Court contemplates here.

Based on its consideration and weighing of the above factors, and in the interests of justice, the Court will grant Wimbish's motion to abate, to the extent discussed above, and abate this case until such time as a verdict of not guilty has been returned or sentencing has been completed in the criminal action against Wimbish.

## Conclusion

The Court DENIES Defendant Richie Ladone Wimbish's Motion to Quash and Motion for a Protective Order [Dkt. No. 22] and GRANTS his Motion to Abate Case [Dkt. No. 22] to the extent set forth above. To accomplish this abatement, rather than stay the action, the Court will administratively close it. Any case over three years old is considered an "old" case by the Administrative Office and is put on a national report. The age of a case continues to accrue if it is merely stayed; however, if it is administratively closed, the time is tolled with the case's age. Accordingly, the Court determines that this case should be, and is hereby, administratively closed. The United States District Clerk is hereby instructed to submit JS-6 form to the Administrative Office, thereby removing this case from the statistical records. Nothing in this order shall be considered a dismissal or disposition of this case, and the parties are directed to file a motion to lift the abatement within **7 days** of the date on which a verdict of not guilty has been returned or sentencing has been completed in the criminal action pending in state court in Cause No. F-1318455 against Defendant Richie Ladone

Wimbish.

SO ORDERED.

DATED: June 19, 2015

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE