IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PAULA LONGORIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:14-cv-3111-L |
| | § | |
| COUNTY OF DALLAS, TEXAS and | § | |
| RICHIE LADONE WIMBISH, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paula Longoria has filed a Motion for Costs under Federal Rule 37 for Defendant County of Dallas, Texas' Failure to Admit Requests for Admissions [Dkt. No. 82] (the "Motion for Costs"). United States District Judge Sam A. Lindsay referred the Motion for Costs to the undersigned United States magistrate judge for hearing, if necessary, and determination pursuant to 28 U.S.C. § 636(b). *See* Dkt. No. 86.

Defendant County of Dallas, Texas ("Dallas County") filed a response, *see* Dkt. No. 99, and Longoria filed a reply, *see* Dkt. No. 100. The Court determines that a hearing or oral argument is not necessary to resolve the Motion for Costs.

For the reasons and to the extent explained below, the Court GRANTS Plaintiff Paula Longoria's Motion for Costs under Federal Rule 37 for Defendant County of Dallas, Texas' Failure to Admit Requests for Admissions [Dkt. No. 82]. *See generally Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. Unit A 1981) (per curiam) (a magistrate judge has authority to enter a nondispositive order granting

-1-

attorneys' fees as a sanction under Federal Rule of Civil Procedure 37).

## Background

Longoria alleges that she was incarcerated in the Dallas County Jail as a pre-trial detainee when she was sexually assaulted by Defendant Richie Ladone Wimbish, a guard and Dallas County employee at the time. *See* Dkt. No. 1. Longoria alleges that, sometime between September 1, 2012 and September 18, 2012, Wimbish escorted her out of her cell and to a mattress room in the West Tower Jail Facility and engaged in sexual intercourse with Plaintiff without her consent. *See id.*

Longoria filed this action against Dallas County and Wimbish, alleging a 42 U.S.C. § 1983 claim against Dallas County and a claim for Intentional Infliction of Emotional Distress against Wimbish. *See id.*

According to Longoria, the Motion for Costs "is necessary because, for more than six months, Defendant Dallas County did not truthfully answer a number of requests for admissions served on it by Plaintiff Paula Longoria." Dkt. No. 82 at 1.

Longoria explains that, on April 21, 2015, she served her First Requests for Admission on Dallas County in which she asked Dallas County to admit ten matters, and that, in its Response to Plaintiff's First Request for Admissions, Dallas County admitted the first matter, that Wimbish had been terminated as a Dallas County employee. *See id.* at 2. According to Longoria, "Dallas County, however, denied the remaining nine requests without any objection. In particular, Dallas County denied requests 3 through 8, which were:

3. Admit that between August 18, 2012 and September 18, 2012,

Defendant Wimbish committed the offense of improper sexual activity
with a person in custody at the Dallas County Jail.
4. Admit that defendant Wimbish committed the offense of improper
sexual activity between August 18, 2012 and September 18, 2012 inside
the Dallas County Jail West Tower Jail Facility.
5. Admit that sometime between August 18, 2012 and September 18,
2012, Defendant Wimbish escorted Plaintiff Paula Longoria out of her cell
and to a mattress room in the West Tower Jail Facility.
6. Admit that sometime between August 18, 2012 and September 18,
2012, Defendant Wimbish was alone with Plaintiff Paula Longoria in a
mattress room in the West Tower Jail Facility.
7. Admit that Defendant Wimbish had improper sexual relations with
Plaintiff Paula Longoria in the mattress room of the West Tower Jail
Facility sometime between August 18, 2012 and September 18, 2012.
8. Admit that Defendant Wimbish had improper sexual relations with
Plaintiff Paula Longoria in the infirmary area of the West Tower Jail
Facility sometime between August 18, 2012 and September 18, 2012.

*Id.* at 2-3. Longoria explains that "[t]hese requests for admission all dealt with the

same subject matter – the charges that Dallas County's own agents had filed against

Defendant Richie Ladone Wimbish." *Id.* at 1.

Longoria asserts that "Dallas County's responses were at odds with its own

records and its own actions," where "Requests 3-8 tracked the allegations against

Wimbish made by a Dallas County Peace Officer, in the 'Affiant for Arrest Warrant or

Capias' dated March 29, 2013, for which the magistrate found probable cause," and

that "[t]he truth of these requests is also confirmed by Dallas County's own internal

investigation of the matter as well as the Judicial Confession Wimbish signed." *Id* at

3 (footnotes omitted). Yet, Longoria contends, Dallas County "refused to admit these

facts for months while discovery proceeded" and then, "[o]n December 30, 2015, more

than six month after denying the requests," "served its Amended Response to

Plaintiff's First Request for Admissions Nos. 3-8, in which it admitted Requests 3-8."

*Id.* (footnote omitted).

Longoria reports that, although "Dallas County finally amended its responses," "during the six months between the initial denials and the amendment, Longoria devoted time and resources attempting to prove facts that Dallas County was obligated to admit, including using 4 of the 10 depositions she is allowed to take without leave under [Federal Rule of Civil Procedure] 30(a)." *Id.* at 1. According to Longoria, "[a]s a result of Dallas County's refusal to admit these matters when first requested, it was necessary for Longoria to review documents and undertake additional discovery in an attempt to prove what Dallas County should have admitted," and "Longoria noticed, prepared for, and took four depositions as a result of Dallas County's refusal to admit the matters as requested:

- the deposition of Jacqueline Nealy Nelson (December 8, 2015), a Dallas County detention officer who during the relevant time period worked on the infirmary floor where the incident involving Longoria took place;
- the deposition of Catherine Mays (December 8, 2015), a Dallas County detention officer who worked on the infirmary floor where the incident involving Longoria took place;
- the deposition of Latoya Neely (December 8, 2015), a Dallas County detention officer who worked on the infirmary floor where the incident involving Longoria took place;
- the deposition of Alfred L. Hutchins (December 30, 2015), the officer who investigated Wimbish regarding the incident involving Longoria."

*Id.* at 3-4. "Longoria's attorneys also conducted a detailed review of documents and records related to the incident itself," and, "[a]s set forth in the Declaration of Lawrence R. Lassiter" [Dkt. No. 82-6], "Longoria incurred reasonable and necessary attorney's fees in the amount of $8,950.00 as a result of Dallas County's refusal to admit the matters as requested and reasonable and necessary costs in the amount of

$1,481.25." *Id.* at 4 (footnote omitted).

Longoria asserts that "[t]he Federal Rules do not allow a party to deny matters it knows to be true without consequence" and that, "[u]nder Federal Rule of Civil Procedure 37(c)(2), Longoria is entitled to recover her costs incurred in proving the truth of these matters" and "[t]he Court must award costs unless one of four specific exceptions applies." *Id.* at 1-2. According to Longoria, "[n]o exceptions apply here: Dallas County did not object to the requests, there was no reasonable basis for Dallas County's failure to admit, there was no chance that Dallas County could have prevailed on the factual issue, and there was no other 'good reason' for not admitting the matters." *Id.* at 2. Longoria argues that "[t]his type of conduct – refusing to admit matters you know to be true – is precisely what Rule 37(c)(2) is intended to deter." *Id.*

Longoria asks that the Court "order that Dallas County pay Longoria costs including $8,950.00 in reasonable and necessary attorney's fees and $1,481.25 in reasonable and necessary deposition costs." *Id.* at 9.

Dallas County responds that, "[i]n addition to responding to request for admissions on June 15, 2015, the County answered requests for production which included [] statements regarding documents related to Defendant Wimbish [] and the Sheriff's investigation into his conduct at issue in this suit" and that, "[a]t no time since she received these responses to requests for production, more than a year ago, has Longoria ever indicated she did not in fact have the Internal Affairs Division file regarding Wimbish and his conduct with regard to her and that she had been in receipt of that file before this matter was assigned to the undersigned counsel in January 6,

2015." Dkt. No. 99 at 2. "It is the County's position ... that providing these 'discovery' documents to Longoria was sufficient 'to make known' to her the 'discovery' sought by requests for admissions nos. 3-8." *Id.*

Dallas County further responds that, "[b]etween June 15, 2015, when the above responses to requests for production were made, and December 30, 2015, when the County amended its answers to the request for admissions nos. 3-8, no written discovery was undertaken by Longoria to prove the truth of the facts sought by those requests denied." *Id.* at 3.

And Dallas County contends that, "at a minimum, the resolution of this motion should await the final outcome of this case" and that, "[w]hether the Court resolves this motion now or after trial, any award of attorney's fees is not appropriate," where, "[o]n the most simplistic level, the documentation submitted by Longoria's counsel is not complete, not sufficient for any award of attorney's fees or deposition costs," and "[t]he necessary affidavits and time records and the like which are mandatory for any award of such fees are absent from this record." *Id.* at 4.

Dallas County additionally responds that "awards under Rule 37(c)(2) are inappropriate where the denied admission is proven with evidence that the requesting party would have offered regardless of the denial." *Id.* at 5. Although Dallas County acknowledges that the decisions that it cites in its response in support of this proposition "have little or no precedential value," "the ruling in those authorities is supported by Fed. R. Civ. P. 26(e) which provides, in pertinent part: '[a] party who has … responded to … [a] request for admission … must … correct its disclosure or

response … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.'" *Id.* at 6 (emphasis removed). According to Dallas County, "[a]t the time of filing this suit, Longoria and her counsel knew that Wimbish had been accused by the Sheriff's Department of having sex with her and the Internal Affairs investigation had confirmed her accusation, with the resulting termination of his employment"; "she knew that Wimbish had been charged with a crime due to his conduct toward her," and "it was only four days after the County sent Longoria its response her requests for admissions that the case was stayed while those criminal charges were resolved"; and, "[w]hen those charges were resolved by Wimbish's plea of guilty, the 'corrective information' regarding the County's denial of requests for admission nos. 3-8 was already [] known to Longoria." *Id.*

Finally, Dallas County reports that "[c]ounsel for the County had a reason for denying requests for admission nos. 3-8, which at the time seemed viable, despite the evidence to the contrary, but in retrospect seems naïve and unduly hopeful." *Id.* Dallas County explains that "[t]hat reason is not offered to excuse her failure to go ahead and confirm these admissions prior to December 31, 2015" but that its counsel's "failure to do so earlier had no impact on the discovery Longoria and her counsel had to undertake to 'discover' whether or not she had sexual contact with Wimbish in the Jail." *Id.*

Longoria replies that "Rule 37(c)(2) is a harsh rule," where, "[u]sing the word

'shall,' it requires a court to award costs, including attorney's fees, when a party improperly denies a request for admissions" and where "[t]his result can only be avoided if any of the four identified exceptions apply." Dkt. No. 100 at 1. According to Longoria, "[a]s is evident from Dallas County's response, none of those exceptions are applicable here," where "[t]he County did not object to the requests, no reasonable basis has been offered to explain the failure to admit, Dallas County ultimately did admit all the matters, and the County identified no other 'good reason' for not admitting the matters." *Id.*

Longoria contends that Rule 37(c)(2) "is harsh, but its purposes are clear and laudable – to deter parties from denying matters that should be admitted and when that does happen, to compensate the party who sent the requests for the costs incurred in attempt to prove matters that should have been admitted." *Id.* at 1-2. And, according to Longoria, while Dallas County "did eventually correct its responses," "Rule 37(c)(2) makes no exception for that." *Id.* at 2.

Longoria further replies that, "[i]n its response, the County repeatedly notes that Longoria had access to evidence that she could use to prove the matters she asked the County to admit" but that this, while "true," "misses the point." *Id.* at 2. According to Longoria, "[t]he point of a request for admission is to establish the truth of a matter conclusively without the necessity of proffering evidence at trial"; "[t]hat Longoria could have used evidence to prove the facts at issue does not absolve the County of its obligation to respond properly to a request for admissions"; and, "[b]ecause Longoria did conduct discovery in an effort to prove what the County should have admitted from

the beginning, the Court should award her the costs incurred in that effort." *Id.*

## Legal Standards

Under Federal Rule of Civil Procedure 36, "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of [Federal Rule of Civil Procedure] 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." FED. R. CIV. P. 36(a)(1). Rule 36 requests are properly directed to matters that the requesting party would otherwise need to prove. *See Am. Auto. Ass'n, Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991).

Under Rule 36(a), when a request for admission is served, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney," although "[a] shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court." FED. R. CIV. P. 36(a)(3). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b).

"In form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party. An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by the district court simply

because it finds the evidence presented by the party against whom the admission operates more credible. This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim." *Am. Auto. Ass'n*, 930 F.2d at 1120 (internal quotation marks and footnotes omitted).

The United States Court of Appeals for the Fifth Circuit has explained that "Rule 36 allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact." *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). "Such breadth allows litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters." *Id.*; *see also Am. Auto. Ass'n*, 930 F.2d at 1121 ("Rule 36 allows parties to narrow the issues to be resolved at trial by identifying and eliminating those matters on which the parties agree." (footnote omitted)).

And "[t]he binding nature of judicial admissions conserves judicial resources by avoiding the need for disputatious discovery on every conceivable question of fact. Once a fact is formally admitted and thereby set aside in the discovery process, the party requesting an admission is entitled to rely on the conclusiveness of it." *Armour v. Knowles*, 512 F.3d 147, 154 n.13 (5th Cir. 2007) (internal quotation marks omitted).

"For Rule 36 to be effective in this regard, litigants must be able to rely on the fact that matters admitted will not later be subject to challenge." *Carney*, 258 F.3d at 419. "Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has

secured the admission, and the purpose of the rule is defeated." *Am. Auto. Ass'n*, 930 F.2d at 1121 (internal quotation marks omitted).

Rule 36 is self-executing, and, in the absence of a timely-served written and signed answer or objection addressed to each matter, all Rule 36 requests for admission served on a party are deemed admitted by default. *See Carney*, 258 F.3d at 420. Once the 30-day period for serving written answers or objections has passed, the defaulting party's sole recourse is to move to withdraw or amend the deemed admissions under Rule 36(b). *See id.* at 419; *see also* FED. R. CIV. P. 36(b) ("Subject to [Federal Rule of Civil Procedure] 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."); *Am. Auto. Ass'n*, 930 F.2d at 1120 ("Once trial has begun, the provisions of F.R.C.P. 16(e), expressly incorporated by Rule 36(b), impose a more restrictive standard: the court will not permit withdrawal or amendment of an admission unless failure to do so would cause 'manifest injustice.'" (footnote omitted)). Correspondingly, Rule 37 does not provide for a motion to compel answers to Rule 36 requests for admission, and Rule 36 does not contemplate a motion to deem requests admitted or to confirm that Rule 36 requests for admission served on a party are deemed admitted by default – although the Court does see such motions to deem admitted filed.

Where the party to whom a Rule 36 request is directed serves on the requesting party a written answer or objection, Rule 36(a)(4) requires that, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering

party cannot truthfully admit or deny it." FED. R. CIV. P. 36(a)(4). "A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." *Id.* Further, "[t]he answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id.* And Rule 36(a)(5) requires that "[t]he grounds for objecting to a request must be stated." FED. R. CIV. P. 36(a)(5).

Once the answering party has served answers or objections, Rule 36(a)(6) provides that "[t]he requesting party may move to determine the sufficiency of an answer or objection" and that, "[u]nless the court finds an objection justified, it must order that an answer be served" and, "[o]n finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." FED. R. CIV. P. 36(a)(6). "Rule 37(a)(5) applies to an award of expenses" on a Rule 36(a)(6) motion regarding the sufficiency of an answer or objection. *Id.*

Sanctions are also available as to Rule 36 requests where "a party fails to admit what is requested under Rule 36 and [] the requesting party later proves a document to be genuine or the matter true." FED. R. CIV. P. 37(c)(2); *see also Vantage Trailers, Inc. v. Beall Corp.*, No. Civ. A. H-06-3008, 2008 WL 4093691, at *2 (S.D. Tex. Aug. 28, 2008) ("Rule 37(c)(2) provides for sanctions against a party for improperly denying a

request for admissions that is later proven to be true.").

In those circumstances, "the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof," and Rule 37(c)(2) directs that "[t]he court must so order unless: (A) the request was held objectionable under Rule 36(a); (B) the admission sought was of no substantial importance; (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or (D) there was other good reason for the failure to admit." FED. R. CIV. P. 37(c)(2); *see also Richard v. Inland Dredging Co., LLC,* No. 6:15-0654, 2016 WL 5477750, at *3 (W.D. La. Sept. 29, 2016) ("One commentator has stated that the 'reasonable grounds' exception is the most important consideration that justifies the refusal to make an award under Rule 37(c)." (internal quotation marks and citation omitted)); *Sparks v. Reneau Pub. Inc.*, 245 F.R.D. 583, 588 (E.D. Tex. 2007) ("Federal Rule of Civil Procedure 37(c)(2) provides that if a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, upon motion the Court 'shall' award the requesting party reasonable fees and expenses incurred in proving up those matters 'unless it finds that (A) the request was held objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit.' This rule leaves the Court with no discretion." (citation omitted; emphasis removed)).

Finally, Federal Rule of Civil Procedure 26(e)(1) provides that "[a] party who has

made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." FED. R. CIV. P. 26(e)(1).

## Analysis

I.   <u>Dallas County failed to admit what later proved to be true.</u>

Rule 37(c)(2) applies here Dallas County first failed to admit the matters at issue in Request Nos. 3 through 8 and then amended its responses to admit each of those matters to be true. *See* Dkt. No. 82 at 6 ("In this case, Dallas County itself has acknowledged the truth of the six matters by, belatedly, amending its responses to the six requests for admissions.").

And the Court agrees with Longoria that, for the same reason, there is no need to wait until after summary judgment proceedings or trial to resolve the Motion for Costs because, where Dallas County "has admitted all the matters in the requests at issue," "[t]hose matters have been established conclusively, and Longoria will therefore not incur any additional costs to prove those matters." Dkt. No. 100 at 3.

II.   <u>Exception (A) – that "the request was held objectionable" – does not apply.</u>

Turning to Rule 37(c)(2)'s enumerated exceptions, the Rule 37(c)(2)(A) exception does not apply because Dallas County never objected to Request Nos. 3 through 8.

III.    Exception (B) does not apply to these substantially important admissions.

Rule 37(c)(2)(B) does not preclude an award of fees and costs where these admissions were of substantial importance to Longoria. "The issue of whether Wimbish did have a sexual encounter with Longoria while she was incarcerated in the Dallas County Jail is of substantial importance," where her "claim under 42 U.S.C. § 1983 that her civil rights were violated is premised on her contention that she was sexually assaulted while in the [Dallas County] Jail" and, as Longoria explains, "[w]ithout proof of this fundamental fact, Longoria cannot succeed in proving that she was even injured, much less that her injuries resulted from Dallas County policies that were 'promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result.'" Dkt. No. 82 at 7 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

To the extent that Dallas County argues that the admissions were unnecessary because Longoria could have learned the information at issue through other discovery, the Court agrees with Longoria that this misses the point. As more fully explained above, "[t]he purpose of Rule 36 admissions is to narrow the array of issues before the court and thus expedite both the discovery process and resolution of the litigation." *AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, No. 3:04-cv-1344-D, 2005 WL 3148284, at *2 (N.D. Tex. Nov. 21, 2005). As Longoria correctly notes, "[w]hen a party admits a request for an admission, that matter is proven, and there is no need to put on testimony or proffer documents to prove it at trial," and "[o]ther documents produced and potential testimony that could be offered at trial are not

substitutes for the legal effect of admitting a matter in response to a request for admission." Dkt. No. 100 at 2, 3.

A party served with Rule 36 requests cannot deny them or refuse to answer simply because the same information may be available to the requesting party by other means. For this reason, too, it is no answer for Dallas County to assert that Longoria could simply have offered "her own testimony that she had sexual contact with Wimbish, regardless of the County's denial." Dkt. No. 99 at 5.

Rule 26(e)(1) does provide, as Dallas County points out, that "[a] party ... who has responded to ... [a] request for admission – must ... correct its ... response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A). The Court addresses Dallas County's reliance – such as it is – on Rule 26(e)(1) more fully below.

Here, it is sufficient to explain that, reading Rules 26(e)(1) and 37(c)(2) together dictates that a party cannot escape sanctions under Rule 37(c)(2) (which provides other enumerated exceptions) simply because, without more, corrective information has otherwise been made known to the other parties during the discovery process or in writing. If the information sought to be admitted has been provided in a form that provides an admission that is equally as binding as a Rule 36(a) admission, the answering party might be relieved of its obligation to correct its answer to a Rule 36(a) request – and, in very particular circumstances and depending on the timing of the

provision of the information by another means and the service of the Rule 36(a) request, might be able to invoke one of Rule 37(c)(2)'s enumerated exceptions. But, as a general matter, and here, production of documents does not fit that bill.

Dallas County also attempts to show that Longoria would have needed to engage in the same discovery and depositions with or without the admissions at issue. But the Court is persuaded, as Longoria argues, that the discovery and depositions that Longoria undertook would not have been necessary in the manner in which she approached them had Dallas County admitted the matters in Request Nos. 3 through 8 in the context of Longoria's Section 1983 claim that her civil rights were violated based on her contention that she was sexually assaulted by Wimbish while in the Dallas County Jail.

Longoria persuasively contends that, "[i]f Dallas County were to admit that the incident occurred – which it should have done given that it fired Wimbish and filed criminal charges against him based on the incident – Longoria would not have needed to closely examine the documentation of the incident itself and depose persons who may have been present during the incident or who investigated the incident." Dkt. No. 82 at 7. As Longoria explains, she "could have instead focused on investigating Dallas County's policies, what its policymakers knew, and whether Dallas County acted with deliberate indifference to the known or obvious danger that female prisoners in custody could be sexually assaulted as Longoria was." *Id.* at 7-8.

Longoria further notes that she "did not have to undertake the identified discovery and investigation to prove her case against Defendant Wimbish," who "had

-17-

already made a Judicial Confession in the 204th District Court of Dallas County wherein he admitted, inter alia, that while he was an employee of Dallas County, he did 'intentionally engage in sexual intercourse with PAULA LONGORIA, who was in custody,'" such that, given his "confession to having sexual relations with Longoria while she was in the jail, that issue was not in dispute with respect to Wimbish." *Id.* at 8.

Dallas County responds that the four depositions were not taken for the purpose of "discovering" or proving there was sexual contact between Longoria and Wimbish, which is the focus of Requests Nos. 3 through 8:

> Next, Longoria took four other depositions. Longoria argues she "wasted" four of her ten depositions (allowed as a matter of right under the local rules) trying to prove the truth of admissions 3-8. She identifies three depositions all taken on December 8, 2015 (see doc. 82, p. 4) of female officers who worked at various times on the infirmary floor of the jail where Longoria was housed when she says she had sexual contact with Wimbish. Those three depositions actually were supportive of the County's denial that sexual contact occurred in the jail, as these witnesses denied any knowledge that such contact occurred or could have occurred. There was nothing in the investigative files which Longoria had prior to these depositions which would have indicated or even suggested any of these witnesses would have any information about sexual contact between Longoria and Wimbish. No prior statements were taken from them that would have indicated anyone of these witnesses was aware of any such sexual contact or even its possibility. So, these depositions were not taken for the purpose of "discovering" or proving there was such contact, which is the focus of the requests for admissions.
> 
> The only other deposition taken was that of the Sheriff Department's Investigator who conducted the Criminal Division's investigation into Longoria's complaint against Wimbish. This criminal investigation was done prior to the investigation also done by the Sheriff Department's Internal Affairs Division. The report of that latter investigation (and its reference to the criminal investigation) was been known to Longoria upon her receipt of the file related to the Internal Affairs investigation, which again was prior to January 6, 2015. Longoria

would have taken this Investigator's deposition regardless of how the County had answered requests for admissions nos. 3-8 because this witness also interviewed Longoria with regard to her allegations. This Investigator would have been deposed to determine if he would be giving any trial testimony adverse to Longoria, even if his investigation did not exonerate Wimbish. And of course, the deposition of this Investigator did in fact reveal his trial testimony will be, at least in part, adverse to Longoria. So, the taking of this deposition was not for the purpose of discovering the "unknown truth" about whether or not Longoria had sexual contact with Wimbish.

Dkt. No. 99 at 3-4 (footnote omitted).

The Court is persuaded that Longoria has the better of this argument when she notes in reply that, "before the depositions were taken, Longoria could not know exactly what these witnesses were going to say" and that her Section 1983 claim "is premised on her contention that she was sexually assaulted by Wimbish while in the Jail," such that "[w]hether Wimbish denies the incident occurred does not matter in Longoria's case against the County," on which she cannot succeed without proving this fundamental fact." Dkt. No. 100 at 3-4. Longoria points out that, "[i]f the County admits that the incident occurred, the very admissions the requests at issue were intended to elicit, then this fundamental fact is established conclusively" but that, in the face of Dallas County's denials, "[g]iven their positions and involvement, Longoria reasonably believed that these witnesses all had information related to whether there was a sexual encounter between Wimbish and Longoria." *Id.* at 4.

Longoria also persuasively explains that the investigator's "deposition and the extensive review of the documentation related to it also becomes unnecessary to the case against the County if the County admits there was a sexual encounter in the Jail"

and that Dallas "County cannot know Longoria's litigation strategy or presume that these depositions would have been taken anyway." *Id.*

And the Court agrees with Longoria that "[t]his argument also ignores the fact that once the sexual encounter is establish conclusively, Longoria could then focus all her discovery efforts on making the requisite showing linking the incident to the County's policies." *Id.*

IV.   <u>Dallas County had no reasonable ground to believe that it might prevail.</u>

As to Rule 37(c)(2)(C), Dallas County does not contend that it had a reasonable ground to believe that it might prevail on the matter, and Longoria has persuasively explained that it did not. *See* Dkt. No. 82 at 8 ("There was simply no reasonable basis for Dallas County to believe that the evidence would show that the incident involving Wimbish and Longoria never took place. Dallas County itself fired Wimbish and prosecuted him for violations of Texas law. Dallas County's own internal investigation documented the incident. Wimbish himself confessed that he had sexual relations with Longoria in the Jail." (footnotes omitted)).

Dallas County points to its Rule 26(e)(1) supplementation obligation but does not assert that, between the time of first denying Request Nos. 3 through 8 and then later admitting them, it "learn[ed] that in some material respect the disclosure or response is incomplete or incorrect." FED. R. CIV. P. 26(e)(1). Although Dallas County points to certain documents to assert that Longoria already knew the truth about the matters at issue, Dallas County expressly does not seek to defend its failure to admit these requests sooner. *See* Dkt. No. 99 at 6. That is, Dallas County does not assert in

response to the Motion for Costs that its counsel had a good "reason for denying requests for admission nos. 3-8, ... despite the evidence to the contrary," which might justify its denying the requests at the time that it did so based on a reasonable ground to believe that it might prevail on the matters at issue and then later amending its answers to admit the matters consistent with Rule 26(e)(1). *Id*. Rather it contends that – as the Court already addressed above – Dallas County's "failure to do so earlier had no impact on the discovery Longoria and her counsel had to undertake to 'discover' whether or not she had sexual contact with Wimbish in the Jail." *Id*.

V.     There was no other good reason for Dallas County to deny the requests.

Finally, as to the Rule 37(c)(2)(D) exception, the Court concludes that Dallas County has not established that it had any other good reason for the failure to admit Request Nos. 3 through 8 under the circumstances presented here, for all of the reasons already discussed above. *See also* Dkt. No. 82 at 9 ("The facts were clear from the beginning. The six requests track Dallas County's own reasons for charging Wimbish with a violation of Texas law, they track the results of Dallas County's own investigation, and Wimbish entered a confession. The refusal to admit facts that were true also cannot simply be chalked up to a 'mistake' that a court may overlook. The Rule does not provide for such an exception, and excusing a failure to admit on such a basis would defeat the very purpose of Rule 37(c)(2) itself.").

VI.    Longoria is entitled to an award of reasonable expenses.

As another district court has noted, "[i]n determining an award pursuant to Rule 37(c)(2) the court looks for a sufficient causal nexus between the expenses claimed, and

the failure to admit. In other words, the court may ask, 'if the party to whom the requests were sent had admitted the matters that it should have admitted, which facts would the propounding party not have to prove?' The reasonable expenses incurred in proving those facts are recoverable." *Cook v. IPC Int'l Corp.*, No. 09-CV-275-JPG, 2012 WL 5354541, at *3 (S.D. Ill. Oct. 29, 2012) (internal quotation marks omitted). But, "[i]f a party's failure to admit did not cause the propounding party to incur additional expenses ..., no award would be justified." *Id.* (internal quotation marks omitted).

The Court finds that Longoria has made this showing as to the attorneys' fees and deposition expenses that she seeks to recover under Rule 37(c)(2). And the Court does not find, as Dallas County asserts, that Mr. Lassiter's declaration falls short of everything that must be established to prove up that reasonable expenses, including attorneys' fees, that Longoria incurred in making that proof that was required where Dallas County failed to admit Request Nos. 3 through 8.

Mr. Lassiter's declaration attests to the necessity of the deposition expenses incurred and to the attorneys' rates and generally identifies the time spent by each attorney and what work was performed – 22 hours of attorney time by Luke Metzler at an hourly rate of $200.00 (for a total of $4,400.00) and 13 hours of attorney time by Mr. Lassiter at an hourly rate of $350.00 to (for a total of $4,550.00) – as well as, as reflected in attached invoices, costs for the preparation of the transcripts of the depositions of Jacqueline Nealy Nelson ($327.00), Catherine Mays ($413.25), Latoya Neely ($318.00), and Alfred L. Hutchins ($423.00), for a total of $1,481.25. *See* Dkt. No. 82-6. Mr. Lassiter further explains his own background and Mr. Metzler's and attests

that their respective hourly rates are reasonable given their respective experience.

The Court finds that hourly rates of $355.00 for a 26-year lawyer and $200.00 for a 4-year lawyer are reasonable and within the market rate for attorneys handling this type of litigation in the Dallas area, where the Court may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services. *See Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976); *see also Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees).

"This Court uses the 'lodestar' method to calculate attorney's fees." *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing *Fender v. Zapata Partnership, Ltd.*, 12 F.3d 480, 487 (5th Cir. 1994)); *Saizan v. Delta Concrete Prods., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). The lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012).

Generally, a fee application must be supported by documentation evidencing the "lodestar" calculation, including affidavits and detailed billing records, and must set forth the itemized number of hours expended in connection with the recoverable attorneys' fees requested. *See Tollett v. City of Kemah*, 285 F.3d 357, 367 (5th Cir. 2002) (using the "lodestar" method to award attorney's fees under Rule 37). "Failing to provide contemporaneous billing statements does not preclude an award of fees per

se, as long as the evidence produced is adequate to determine reasonable hours" and to "provide this court with sufficient information to determine whether all of the amounts requested were reasonably expended," in this instance, in making the proof required by Dallas County's failure to originally admit Request Nos. 3 through 8. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 325 (5th Cir. 1995).

Mr. Lassiter's statements aggregating the amount of time that he and Mr. Metzler spent on the work performed does not provide the requisite level of hourly and task-based detail to permit the Court to fully perform and complete this review. Accordingly, Longoria must supplement the materials in support of her request for fees that she has submitted with her Motion for Costs.

But, the Court notes, Northern District of Texas Local Civil Rule 7.1 requires that parties confer before filing an application for attorneys' fees. In the interest of efficiency and judicial economy, Longoria's counsel and Dallas County's counsel are directed to confer by telephone or face-to-face about the reasonable amount of the attorneys' fees and expenses to be awarded under Rule 37(c)(2) as outlined above. Any attorney refusing to confer as directed will be subject to sanctions.

By no later than **December 13, 2016**, Longoria and Dallas County must file a joint status report notifying the Court of the results of the conference. If all disputed issues as to the amount of reasonable expenses, including attorneys' fees, to be awarded to Longoria under Rule 37(c)(2) have been resolved, Longoria's counsel must also send an agreed proposed order to the Court at Horan_Orders@txnd.uscourts.gov by **December 13, 2016**.

-24-

If the parties do not reach an agreement as to the amount of reasonable expenses, including attorneys' fees, to be awarded to Longoria, Longoria must, by no later than **December 20, 2016**, file a supplemental application for reasonable expenses, including attorneys' fees, that is accompanied by the supporting evidence described above.

If an application is filed, Dallas County must file any response by **January 10, 2017**, and KeyCorp must file any reply by **January 24, 2017**.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS Plaintiff Paula Longoria's Motion for Costs under Federal Rule 37 for Defendant County of Dallas, Texas' Failure to Admit Requests for Admissions [Dkt. No. 82].

The Court will, by a subsequent order to be entered after submission of the additional materials described above, award an appropriate amount of reasonable expenses, including attorneys' fees, under Federal Rule of Civil Procedure 37(c)(2).

SO ORDERED.

DATED: November 22, 2016

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE