IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **PAULA LONGORIA,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. **3:14-CV-3111-L** |
| **COUNTY OF DALLAS, TEXAS and** | § | |
| **RICHIE LADONE WIMBISH,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendant Dallas County's Motion for Judgment on the Pleadings (Doc. 70), filed May 26, 2016; Defendant Richie Ladone Wimbish's Motion for Summary Judgment (Doc. 61), filed April 19, 2016; and Defendant Dallas County's Motion for Summary Judgment (Doc. 96), filed August 3, 2016. After careful consideration of the motions, briefs, pleadings, admissible summary judgment evidence, and applicable law, the court **grants** Defendant Richie Ladone Wimbish's Motion for Summary Judgment (Doc. 61) and **dismisses with prejudice** Plaintiff's intentional infliction of emotional distress ("IIED") claim but will allow Plaintiff to amend her pleadings to assert a claim or claims based on assault or sexual assault against Richie Ladone Wimbish ("Wimbish"). Further, the court **grants in part and denies in part** Defendant Dallas County's Motion for Judgment on the Pleadings (Doc. 70); **grants in part and denies in part** Defendant Dallas County's Motion for Summary Judgment (Doc. 96), and **dismisses with prejudice** Plaintiff's section 1983 claim, to the extent based on theories of conditions of confinement, state-created danger, or municipal liability theories. Plaintiff's claim under section 1983 based on episodic

acts or omissions remains for trial, as will any claim by Plaintiff, if asserted in an amended pleading, for assault or sexual assault against Wimbish.

## I.      Factual and Procedural Background

On August 29, 2014, Plaintiff Paula Longoria ("Plaintiff" or "Longoria") filed this action against Defendants Dallas County ("Dallas County" or "the County") and Wimbish, who was employed by Dallas County as a detention service officer ("DSO") at the Dallas County Jail ("DCJ" or "Jail") when the events that form the basis of Longoria's claims in this case occurred.  From August 18, 2012, to September 18, 2012, Longoria was incarcerated at the DCJ as a pretrial detainee. On one occasion in September 2012, while Longoria was incarcerated at the DCJ, Wimbish escorted her out of her cell to a mattress room in the infirmary area near the West Tower of the Jail where he had sex with her.  Longoria and Wimbish dispute whether the sex was consensual.  Longoria contends that, given her mental state, history of sexual abuse, and her status as a detainee in the Jail, she did not have the capacity to consent to Wimbish's sexual advances and misconduct.

In Plaintiff's Original Complaint ("Complaint"), Longoria asserts a cause of action under Texas law for IIED against Wimbish based on her contention that she was sexually assaulted by Wimbish in violation of section 39.04 of the Texas Penal Code.  Longoria also asserts a claim against Dallas County, pursuant to 42 U.S.C. § 1983, for alleged violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, based on Wimbish's conduct. Longoria seeks actual and exemplary damages, attorney's fees, costs, prejudgment interest, and postjudgment interest.

On April 19, 2016, Wimbish moved for summary judgment on Plaintiff's IIED claim.  On May 26, 2016, Dallas County moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) on Plaintiff's claim under section 1983, which is based on various theories of

liability. On August 3, 2016, Dallas County moved for summary judgment on Plaintiff's claim under

section 1983 claim. In response to Wimbish's summary judgment motion and Dallas County's Rule

12(c) motion, Longoria requested to amend her pleadings, if necessary.

## II.   Dallas County's Motion for Judgment on the Pleadings

Dallas County contends that it is entitled to judgment as a matter of law under Rule 12(c) on

Plaintiff's claim under section 1983.

### A.   Rule 12(c) Standard for Judgment on the Pleadings

Any party may move for judgment on the pleadings after the pleadings are closed and when

it would not delay the trial. Fed. R. Civ. P. 12(c). "Rule 7(a) provides that the pleadings are closed

upon the filing of a complaint and an answer (absent a court-ordered reply) . . . ." 5C Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 at 213 (3d ed. 2004) (footnote

omitted). If, however, "a counterclaim, cross-claim, or third-party claim is interposed, . . . the filing

of a reply to a counterclaim, crossclaim answer, or third-party answer normally will mark the close

of the pleadings." *Id*. (footnote omitted). A "defendant may not move under Rule 12(c) prior to

filing an answer." *Id*. at 214.

A motion brought pursuant to Rule 12(c) "is designed to dispose of cases where the material

facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of

the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914

F.2d 74, 76 (5th Cir. 1990) (citation omitted). A court, when ruling on a motion for judgment on

the pleadings pursuant to Rule 12(c), applies the same standard as that used for a motion to dismiss

under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Doe v. MySpace,*

*Inc.,* 528 F.3d 413, 418 (5th Cir. 2008) (citation omitted); *Great Plains Trust Co. v. Morgan Stanley*

*Dean Witter*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (citation omitted).

**Memorandum Opinion and Order – Page 3**

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise,

"'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).  Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).  The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th

Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge.  *Adams*, 556 F.2d at 293.

### B.      Analysis

Dallas County contends that all of the theories relied on by Plaintiff to support her claim under section 1983 fail as a matter of law, and it is entitled to judgment as to this claim.

### 1.      Section 1983 Claim for Fourth, Fifth, and Eighth Amendment Violations

Dallas County contends, as a preliminary matter, that Plaintiff's section 1983 claim based on alleged violations of the Fourth, Fifth, and Eighth Amendments to the United States Constitution fails as a matter of law because it is a state actor, and these amendments apply only to violations committed by federal actors. Longoria does not address this contention in response to Dallas County's motion.  The court, therefore, concludes that she has abandoned any claim for alleged violations of the Fourth, Fifth, and Eighth Amendments.  Moreover, the court agrees that Longoria, as a pretrial detainee, cannot assert a claim under section 1983 against the County based on alleged violations of the Fifth and Eighth Amendments because "the Eighth Amendment . . . do[es] not apply to pretrial detainees," and "the Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).  Further, while the Fourth Amendment is applicable to state actors through the Fourteenth Amendment, the Fourth Amendment protects against unreasonable searches and seizures, and Longoria has not alleged any facts to support a claim based on an unreasonable search or seizure. Accordingly, to the extent Plaintiff's claim is based on alleged constitutional violations of the Fourth, Fifth, and Eighth Amendments, it fails as a matter of law, and the County is entitled to judgment on this claim.

**Memorandum Opinion and Order – Page 6**

### 2.      Section 1983 Claim Based on State-Created Danger Theory

Dallas County next asserts that any claim by Plaintiff under section 1983 based on a "state-created danger" theory that the County is directly liable to her for Wimbish's conduct fails as a matter of law. Dallas County contends that the Fifth Circuit has not adopted such a theory in the section 1983 context. For support, the County cites *Doe ex rel. Magee v. Covington County School District ex rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012) (en banc). Alternatively, the County contends that, even if adopted and recognized by the Fifth Circuit, the state-created danger theory applies only in situations in which a "state actor created a dangerous situation that caused or allowed a **private party** to harm a citizen." Def.'s Mot. for J. 9. The County contends that the theory does not apply in this case because "no [non-state actor' or private party is alleged to have sexually assaulted Longoria." *Id.*

The court need not address the correctness of this argument by the County because Longoria does not address it in her response to Dallas County's motion. Accordingly, the court concludes that she has abandoned any claim under section 1983 based on a "state-created danger" theory, and the County is entitled to judgment as a matter of law on this claim.

### 3.      Section 1983 Claim Based on Conditions of Confinement or Episodic Acts or Omissions

Dallas County contends that Longoria's allegations that she was sexually assaulted by Wimbish more closely resemble an episodic acts or omissions theory than a conditions of confinement theory of liability. Regardless, Dallas County contends that any claim by Longoria based on conditions of confinement fails because "an actor [Wimbish] is interposed between Longoria and the County, such that Longoria complains first of a particular act by Wimbish and then points derivatively to a policy, custom, or rule (or lack thereof) of the County that permitted or

caused the act.  *Id.* at 8 (citing *Shepherd v. Dallas Cnty.*, 591 F.3d 445 (5th Cir. 2009)).  The County, therefore, contends that there is no basis for section 1983 liability under a conditions of confinement theory.

As Longoria did not respond to the County's argument regarding the applicability of a conditions of confinement theory in this case, the court concludes that she has abandoned her claim under section 1983 based on this theory, and the County is entitled to judgment as a matter of law on this claim.  On the other hand, the court concludes that County is not entitled to judgment on Longoria's claim under section 1983 based on an episodic acts or omissions theory because, although the County moved for judgment on Longoria's section 1983 claim in its entirety and mentions the episodic acts or omissions theory, it does not address why a claim based on this theory fails as a matter of law.  Accordingly, the court will deny the County's motion for judgment on Longoria's claim under section 1983 based on an episodic acts or omissions theory.

### 4.      Section 1983 Claim Based on Municipal Liability

Dallas County contends that it is entitled to judgment on Plaintiff's municipal liability claim because Plaintiff has not alleged sufficient facts to satisfy the requirements of municipal liability under 42 U.S.C. § 1983.  Among other things, the County asserts that Longoria fails to allege facts regarding sexual assaults of other inmates by jail personnel or a pattern of similar violations that Sheriff Lupe Valdez ("Sheriff"), the County's policymaker, took lightly.  In addition, the County contends that Longoria fails to allege the reasons why the Sheriff's training or supervision

procedures are inadequate and instead asks the court to infer impermissibly that the Sheriff's training and supervision were inadequate based solely on the misconduct of Wimbish.[1]

Longoria responds that municipal liability can be established without a pattern of prior similar incidents. Longoria asserts that, while the requirement of deliberate indifference is often based on a pattern of similar incidents, a single incident can give rise to liability when the alleged constitutional violation is highly predictable or the result of a patently obvious risk of the failure to train. Longoria contends that the highly predictable risk of sexual assaults was identified by the Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. § 15601, *et seq*., which includes recommendations for better training and supervision that the County has failed to implement. Longoria, therefore, contends that she has properly alleged the County's deliberate indifference to the need for better training to prevent sexual assaults of confined persons based on a single-incident theory under section 1983. Longoria further asserts that discovery in this case has revealed multiple incidents of sexual misconduct that occurred before and after she was assaulted that went undetected by the monitoring system in place at the Jail. Longoria contends that a jury could infer from this and other evidence that the County acted with deliberate indifference to the danger that inmates like her might be subjected to sexual misconduct. Longoria contends that the evidence in this case also satisfies the other requirements for municipal liability. Longoria submitted evidence in support of her response, which was objected to by Dallas County. If necessary, Longoria asks that she be allowed to amend her pleadings.

---

[1] As the County acknowledges that the Sheriff is a final policymaker for Dallas County, the court refers to Sheriff Lupe Valdez ("Sheriff" or "Sheriff Valdez"), the Dallas County Sheriff's Department ("Sheriff's Department" or "the Department"), and the County interchangeably when referring to the Sheriff's, the Department's, or the County's policies or procedures that are at issue in this case.

The court determines that resolution of the issue of municipal liability in this case is better suited for summary judgment. Accordingly, the court addresses this issue below in the context of the County's summary judgment motion on municipal liability. For the reasons herein explained, the court determines that the County is entitled to judgment under Rule 56 on Plaintiff's municipal liability claim under section 1983, regardless of whether it is based on a pattern of violations or a single-incident theory. The court will, therefore, deny as moot the County's motion for judgment on the pleadings as to Plaintiff's municipal liability claim under section 1983, and **denies as moot** Plaintiff's request to amend her pleadings as to this claim.

## III.    Defendants' Motions for Summary Judgment

As noted, Wimbish and Dallas County filed separate summary judgment motions with respect to Plaintiff's claims for IIED and constitutional violations under section 1983.

### A.    Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility

determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the

**Memorandum Opinion and Order – Page 11**

entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant

and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id*.

If the nonmoving party fails to make a showing sufficient to establish the existence of an element

essential to its case and on which it will bear the burden of proof at trial, summary judgment must

be granted.  *Celotex*, 477 U.S. at 322-23.

### B.    Undisputed Relevant Facts

1.    On March 10, 2008, Wimbish was hired as a DSO for the Sheriff's Department.  As such, he was an employee of Dallas County.

2.    As a condition of his employment, Wimbish was required to attend the Basic Corrections Officer Course, a course which satisfies the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE").  As part of that course, students are instructed regarding the circumstances that constitute violations of Texas criminal law by law enforcement officers, including sexual assault under Texas Penal Code § 22.011 and improper sexual relations with a person in custody under Texas Penal Code § 39.04.  Before being hired, Wimbish was also required to pass the examinations given by TCLEOSE to be licensed as a law enforcement officer and work as a DSO in the Jail. Wimbish took and passed the TCLEOSE examinations.

3.    Wimbish testified that he was aware that it was improper for a jailer to have sex with an inmate, but he could not recall receiving training in connection with his employment as a DSO that instructed him that it was inappropriate for him to have sex with an inmate.

4.    Between August 18, 2012, and September 14, 2012, Longoria was a pretrial detainee in the DCJ.

5.    On one occasion while Longoria was a pretrial detainee in the DCJ, Wimbish escorted her out of her cell to a "mattress room" in the infirmary area near the West Tower of the Jail and had sexual intercourse with her.

6.    During an interview with her probation officer after being released, Longoria revealed for the first time that she and Wimbish had sex while she was incarcerated.

7.    Following an investigation by the Internal Affairs Division of the Sheriff's Department, Wimbish's employment was suspended, and he was referred by the Department for criminal prosecution.

**Memorandum Opinion and Order – Page 12**

8.    On March 29, 2013, Wimbish was arrested and charged with improper sexual activity with a person in custody, a violation of Texas Penal Code 39.04, which is a state jail felony. In a judicial confession, Wimbish admitted to engaging in sexual intercourse with Longoria while he worked at and Longoria was in custody at the DCJ. Wimbish subsequently pleaded guilty to the reduced charge of assault under section 22.01 of the Texas Penal Code, a Class A misdemeanor, and was sentenced to one-year deferred adjudication and one-year community supervision.

9.    On April 4, 2013, Wimbish's employment with the Sheriff's Department was terminated.

10.    According to the Department of Justice report, "Survey of Sexual Violence in Adult Correctional Facilities, 2009-11-Statistical Tables," three sexual assaults of inmates by jailers in the DCJ were reported between 2009 and 2011. Of the three assaults reported during this three-year period before Wimbish had sex with Longoria, only one assault that occurred in 2009 was substantiated.

11.    During the time relevant to this action, the Sheriff's Department complied with the minimum requirements of the Texas State Commission on Jail Standards in all material respects, including its standards for the training of officers and the staffing levels for monitoring and supervision in the Jail. No deficiency in the Department's operation of the Jail was noted by the Texas State Commission on Jail Standards regarding the Department's training policy, the number of staff assigned to monitor activities within the Jail, or the number of staff assigned to supervise employees.

12.    Sheriff Valdez has never condoned sexual contact between inmates and employees and was not aware of any allegation of sexual contact between an inmate and DCJ employee that was not thoroughly investigated. When appropriate, DCJ employees are subjected to disciplinary action, including termination of their employment and possible referral for criminal prosecution, as was done in Wimbish's case after Longoria revealed that he had sex with her while she was incarcerated.

### C.    Wimbish's Summary Judgment Motion

Wimbish moves for summary judgment on Plaintiff's IIED claim, the only claim asserted against him. To recover for the tort of IIED under Texas law, the plaintiff must establish (1) that the defendant acted intentionally or recklessly; (2) that the defendant's conduct is extreme and outrageous; (3) that the defendant's actions caused the plaintiff emotional distress; and (4) that the emotional distress suffered by the plaintiff was severe. *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144

S.W.3d 438, 445 (Tex. 2004) (citation omitted); *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). The Texas Supreme Court has emphasized that IIED is a "gap-filler" tort that was judicially created to allow recovery in rare instances in which severe emotional distress is inflicted in such an unusual manner that there are no other recognized theories of redress. *See Zeltwanger*, 144 S.W.3d at 447. Thus, the tort of IIED cannot be maintained as a separate claim unless "the victim has no other recognized theory of redress." *Id.* (citation omitted). When "the gravamen of a plaintiff's complaint is really another tort, [IIED] should not be available." *Id.* (citations omitted).

Wimbish contends that Longoria cannot satisfy the elements for her IIED claim against him because their sexual relationship was consensual; Longoria had numerous sexual partners other than him while incarcerated and after her release; and any mental suffering she sustained is attributable to events that occurred before Longoria met him. Wimbish notes that Longoria is a convicted sex offender. In addition, Wimbish contends that Longoria's IIED claim fails as a matter of law under *Zeltwanger* because she has other available remedies, namely, a cause of action for civil assault. As Wimbish's gap-filler argument is dispositive of Longoria's IIED claim, the court focuses on it and need not address the parties' other contentions.

Regarding Wimbish's gap-filler contention, Longoria responds that she is not precluded from pursuing an IIED claim in this case because "Texas courts presented with the same situation have repeatedly rejected this argument." Pl.'s Resp. 21. For support, Plaintiff cites *Toles v. Toles*, 45 S.W.3d 252 (Tex. App.—Dallas 2001, pet. denied); *Conley v. Driver*, 175 S.W.3d 882 (Tex. App.—Texarkana 2005, pet. denied); and *Doe v. Beaumont I.S.D.*, 8 F. Supp. 2d 596 (E.D. Tex. 1998). Longoria further asserts that this case is distinguishable from *Zeltwanger* because, unlike the

plaintiff in that case, she has no statutory claim.  Longoria, therefore, contends that she should be able to proceed with her IIED claim against Wimbish.  Alternatively, she requests to amend her pleadings to assert an assault claim against Wimbish if the court determines that her IIED claim is barred.

It is clear from Texas Supreme Court precedent that the gap-filler doctrine applicable to IIED claims is not limited to cases involving other available statutory claims.  The court in *Zeltwanger* discussed *Standard Fruit*, which in turn discusses Restatement (Second) of Torts §§ 46-47 (1965). Neither of these authorities limits application of the gap-filler rationale to cases involving other available statutory remedies.  *See id.* at 447; *Standard Fruit & Vegetable Co.*, 985 S.W.2d at 66-68. They instead explain that the limitation on IIED claims applies whenever the conduct or harm alleged is redressable under any alternative theory of recovery.  *Zeltwanger*, 144 S.W.3d at 447 ("Properly cabined, the tort simply has no application when the actor intends to invade *some other legally protected interest*, even if emotional distress results.") (citations and internal quotation marks omitted) (emphasis added); *Standard Fruit & Vegetable Co.*, 985 S.W.2d at 67-68 ("[S]ection 46 recovery is not available if an actor intends to cause some other harm or if his conduct poses a risk of some harm other than emotional distress.[] There is no liability under section 46 if the actor 'intends to invade *some other legally protected interest*,' even if emotional distress results. . . . Whe[n] emotional distress is solely derivative of or incidental to the intended or most likely consequence of the actor's conduct, recovery for such distress must be had, if at all, *under some other tort doctrine*. . . . [T]he tort's clear purpose is to supplement *existing forms of recovery* by providing a cause of action for egregious conduct 'that its more established neighbors in tort doctrine would technically fence out.'") (citations omitted) (emphasis added).

**Memorandum Opinion and Order – Page 15**

Although the plaintiff in *Zeltwanger* was barred from asserting an IIED claim because the gravamen of her sexual harassment and retaliation claims under the Texas Commission on Human Rights Act was the same as her IIED claim, the Texas Supreme Court in that case cited with approval cases from other state and federal jurisdictions that involved statutory, as well as nonstatutory common law claims, including common law claims for assault. *See Zeltwanger*, 144 S.W.3d at 447-48 (citing *Rice v. Janovich*, 742 P.2d 1230, 1238 (Wash. 1987) (assault)). Moreover, the Texas Supreme Court in *Credit Watch* expressly "reiterated" that "intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate *existing statutory or common-law remedies*. Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Creditwatch, Inc.*, 157 S.W.3d at 816 & n.10 (citing *Zeltwanger*, 144 S.W.3d at 447). Thus, Longoria's argument that she should be allowed to proceed with her IIED because she does not have a corresponding statutory claim is foreclosed by Texas Supreme Court precedent, which makes clear that IIED claims are barred under Texas law whenever other existing remedies are available, regardless of whether the remedies are statutory or common-law in nature, *Creditwatch, Inc.*, 157 S.W.3d at 816, and regardless of whether the plaintiff "succeeds on, or even makes" an alternative claim. *Zeltwanger*, 144 S.W.3d at 448.

The three cases cited by Longoria do not exempt her IIED claim from the gap-filler doctrine adopted by the Texas Supreme Court or support a contrary conclusion. *Toles v. Toles* and *Doe v. Beaumont Independent School District* were both decided before the Texas Supreme Court's opinions in *Standard Fruit*, *Zeltwanger*, and *Creditwatch*. The opinions in these cases cited by Longoria, therefore, do not, and could not have addressed the applicability of the gap-filler doctrine that was subsequently adopted by the Texas Supreme Court. Additionally, as correctly noted by

Wimbish, *Conley v. Driver* discusses whether the IIED claim asserted in that case is barred by the gap-filler doctrine, but the case is distinguishable.  In *Conley*, a stepfather (Conley) sued his stepdaughter (Driver) for defamation after she reported that he had sexually abused her as a child. Driver counterclaimed for assault and IIED.  *Conley*, 175 S.W.3d at 884.  The court in *Conley* determined that the IIED counterclaim was not barred based on the gap-filler reasoning in *Zeltwanger* and *Creditwatch* because there was an independent basis for the IIED claim separate and apart from the sexual assault, that is, Conley had surreptitiously videotaped the sexual encounters with Driver, made copies of the videotapes, and threatened to ruin Driver's life by sending copies of the videotapes to Driver's mother, boyfriend, family, and school.  *Id.* at 884, 888, & n.5.

In this case, the factual basis for Longoria's section 1983 claim against the County and her IIED claim against Wimbish is identical.  Longoria alleges that Wimbish, a Dallas County DSO who worked at the DCJ, had "sexual intercourse" or "sexual relations" with her, in violation of Texas Penal Code 39.04, while she was incarcerated as a pretrial detainee at the DCJ in 2012, and again after she was released and on probation.  Longoria characterizes the sexual relations with Wimbish as "non-consensual"; "criminal"; "sexual assault and aggravated sexual assault."  Pl.'s Compl. ¶¶ 9, 11, 12, 13, 17-21, 23(a), 24, 32.  Longoria alleges, "As a result of the non-consensual sexual assault, [she] suffered physical and emotional pain and emotional distress and has needed to submit herself to psychological treatment."  *Id.* ¶ 13.  Longoria originally alleged in her Complaint that her claims in this case were based on Wimbish's "repeated," "multiple sexual assaults" that occurred on "multiple occasions" "over an extended period of time."  *See id.* ¶¶ 11, 13, 17, 23(a), 25, 32.  In response to the County's summary judgment motion, Longoria, however, retreats from this position and clarifies that she "is not pursuing any claim based on allegations that she was assaulted multiple

**Memorandum Opinion and Order – Page 17**

times while in jail or that the County failed to investigate this incident."  Pl.'s Resp. 20 n.32 (Doc.

104).

Longoria has opted in this case to pursue only her claim under section 1983 against the

County for constitutional violations with respect to Wimbish's sexual misconduct on September 11,

2012, but she could have asserted a claim under section 1983 for constitutional violations based on

the sexual assault against Wimbish in his individual capacity. *See Doe v. Taylor Indep. Sch. Dist.,*

15 F.3d 443, 451-52 (5th Cir. 1994) (en banc) (holding that sexual abuse and violation of bodily

integrity clearly violate substantive due process rights under Fourteenth Amendment); *McClendon*

*v. City of Columbia*, 305 F.3d 314, 335-36 (5th Cir. 2002) (same); *Holguin v. Lopez*, 584 F. Supp.

2d 921, 924-28 (W.D. Tex. 2008) (denying motion to dismiss claim for constitutional violations

under § 1983 claim against police officer in his individual capacity). Additionally, as noted by

Wimbish, Longoria could have asserted a claim against him for assault under Texas law, as her

pleadings are replete with assault allegations and based entirely on such allegations.  While a private

litigant does not have standing to sue for violations of the Texas Penal Code, a plaintiff may sue to

recover damages in a civil action under Texas law for assault and sexual assault.  *See, e.g., Madison*

*v. Williamson*, 241 S.W.3d 145, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (explaining

that, after Williamson was charged with indecency with a child and aggravated sexual assault and

pleaded guilty to the lesser offense of assault under Texas Penal Code 22.01, a civil action was

brought against Williamson on behalf of the child for assault, false imprisonment, and negligence).

Because other forms of recovery are available, there is no gap to fill, and Longoria's IIED

claim based on Wimbish's alleged sexual assault is precluded by *Zeltwanger*.  *See Holguin*, 584 F.

Supp. 2d at 928 (holding that the plaintiff's IIED claim against a police officer failed as a matter of

law because it was "based on the same operative facts as his claims for constitutional violations" under § 1983); *Almond v. Tarver*, 468 F. Supp. 2d 886, 905 (E.D. Tex. 2006) ("Because § 1983 and the common law tort of assault are the appropriate avenues for redress of Almond's alleged injuries, his intentional infliction of emotional distress claim fails as a matter of law."). While *Zeltwanger* applied the gap-filler doctrine to preempt a plaintiff's IIED claim that was based on the same facts as her sexual harassment and retaliation claims under a Texas statute, federal courts in Texas have applied the same doctrine to IIED claims raised alongside claims under section 1983 and other federal statutes. *See id.*; *see also Howe v. Yellowbook, USA*, 840 F. Supp. 2d 970, 979 (N.D. Tex. 2011) (citing cases). Accordingly, Wimbish is entitled to judgment as a matter of law on Longoria's IIED claim, which will be dismissed with prejudice.

The court, however, grants Plaintiff's request to amend her pleadings to assert a claim or claims for assault against Wimbish. Generally, the court does not allow amendment of pleadings at this late stage of the litigation. In this case, however, the factual basis for Longoria's claim against Wimbish has always been sexual assault, and Wimbish acknowledges as much in his summary judgment motion. Wimbish, therefore, cannot claim surprise or undue prejudice if Longoria is allowed to amend her pleadings to assert a claim for assault or sexual assault. Moreover, Wimbish did not object to Longoria's request to amend her pleadings to assert a claim or claims for assault, and, given the posture of this case and to advance the interest of justice, the court determines that good cause exists to allow the amendment of Plaintiff's pleadings.

### D.    Dallas County's Summary Judgment Motion (Municipal Liability)

Dallas County contends that it is entitled to judgment on Longoria's Fourteenth Amendment municipal liability claim under section 1983 because the evidence fails to establish that it maintained

or adopted an official policy or practice with deliberate indifference to the rights of its citizens that was the moving force behind the underlying constitutional violation of Longoria's rights. For purposes of its motion, the County assumes that: (1) Longoria's Fourteenth Amendment rights were violated by its employee, Wimbish; and, (2) Longoria's claim that Wimbish had sexual contact with her, whether consensual or not, constitutes the "underlying constitutional violation" for determining whether it should be subject to section 1983 liability for Wimbish's conduct.

### 1.      Standard for Municipal Liability Under 42 U.S.C. § 1983

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id*.; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). To establish a constitutional or federal claim based on a policy or custom, a plaintiff must show that: "1) a policy or custom existed; 2) the governmental policymakers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation." *Meadowbriar Home for Children Inc. v. Gunn*, 81 F.3d 521, 532-33 (5th Cir. 1996) (citation omitted). Official policy is defined as:

1.      A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [county] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.      A persistent, widespread practice of [county] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents

> [county] policy. Actual or constructive knowledge of such custom must be
> attributable to the governing body of the [county] or to an official to whom
> that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*) (per curiam); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*). When "an alleged policy or custom is facially innocuous, establishing the requisite official knowledge requires that a plaintiff establish that an official policy was promulgated with deliberate indifference to the known or obvious consequences that the constitutional violations would result." *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (citation and internal quotation marks omitted). A plaintiff must identify the policy, connect the policy to the governmental entity itself, and show that the alleged injury was incurred because of the application of that specific policy. *Bennett*, 728 F.2d at 767. In addition, a plaintiff must establish that the governmental entity, through its deliberate conduct, was the "moving force behind the injury alleged" and a direct causal link between the governmental entity's action and the deprivation of a federally protected right. *Brown,* 520 U.S. at 404.

### 2.    Analysis

Longoria's municipal liability claim under section 1983 is based on her allegation that Dallas County failed to adequately train and supervise DCJ personnel.[2] She also contends that the County failed to adequately investigate inmate sexual assault complaints and discipline DCJ personnel in response to such complaints.[3] Plaintiff asserts in her pleadings that this conduct by the County

---

[2] In her response to the County's summary judgment motion, Longoria repeatedly uses the terms supervise and monitor interchangeably. The court's discussion in this opinion regarding Longoria's claim against the County for failure to adequately supervise DCJ DSOs encompasses her similar contentions regarding inadequate monitoring.

[3] Longoria sets forth the following grounds in her Complaint regarding her claim for the imposition of municipal liability against Dallas County under section 1983: (1) failure to adequately train subordinates to identify, report, and deter criminal sexual assaults in the DCJ; (2) "allowing unsupervised contact between Wimbish and/or other male personnel and Plaintiff, given that . . . Longoria suffered from depression, bipolar disorder, and diminished capacity,

demonstrates a "continuing, widespread, and persistent pattern of unconstitutional conduct by Dallas County employees at the [DCJ]." *Id.* ¶ 24.  For the first time in response to the County's summary judgment motion, Longoria appears to retreat from this position and contends that she does not need to establish a pattern of unconstitutional conduct because evidence of the single sexual assault by Wimbish in September 2012, while she was incarcerated, is sufficient to support municipal liability. From this, it appears that Longoria has abandoned her municipal liability claim based on a pattern of unconstitutional conduct and is instead relying solely on a "single-incident" theory of liability. Out of an abundance of caution, the court addresses Plaintiff's municipal liability claim under both theories (pattern and single-incident), and, for the reasons that follow, determines that Plaintiff has failed to raise a genuine dispute of material fact as to either theory.

### a.      Inadequate Investigation and Discipline

Regarding Plaintiff's claim based on inadequate investigation and discipline, the County contends that Longoria cannot establish any of the requirements for section 1983 liability with respect to her claim that, before she was assaulted by Wimbish, the Sheriff failed to adequately investigate sexual assault complaints and discipline DCJ personnel in response to such complaints. For support, the County relies on Sheriff Valdez's affidavit regarding the Department's investigation of Wimbish's sexual misconduct with Longoria and the Department's general practice for handling

---

conditions that were known to Wimbish and Dallas County"; (3) the occurrence of "multiple sexual assaults made the subject of this lawsuit which occurred over an extended period of time"; (4) "little or no supervision of the jail personnel in contact with female inmates like Plaintiff at the [DCJ]"; (5) "lack of supervision coupled with a policy that allowed male jail personnel [Wimbish] to remove Plaintiff by himself and take Plaintiff around the jail as he pleased"; (6) inadequate "supervision of video monitors at the jail so as to render them useless and to facilitate sexual misconduct by [DCJ] personnel"; and (7) "complaints by previous inmates of molestation by [DCJ] personenl; and/or little or no investigation" and documentation of prior sexual misconduct complaints, and "merely cosmetic disciplinary action or action which came too slowly and too late to rebut tacit encouragement." Pl.'s Compl. ¶¶ 21-23. As previously noted, Plaintiff expressly abandoned her municipal liability claim under section 1983 based on her contentions that she was sexually assaulted multiple times while incarcerated, and the County failed to investigate the assault(s).

such claims.   Among other things, Sheriff Valdez states in her affidavit that: (1) she has never condoned sexual contact between inmates and employees; (2) she was not aware of any allegation of sexual contact between an inmate and DCJ employee that was not thoroughly investigated; and (3) DCJ employees, when appropriate, are subjected to disciplinary action, including termination of their employment and possible referral for criminal prosecution, as was done in Wimbish's case after Longoria revealed that he had sex with her while she was incarcerated.

The County asserts that there is no evidence: (1) Wimbish had sex with Longoria on more than one occasion; (2) the Department had a practice or persistent, widespread, and longstanding pattern of not investigating sexual misconduct claims or complaints involving DSOs and incarcerated persons; (3) the Sheriff or Department did not take such claims seriously or did not adequately discipline Jail employees found to have engaged in sexual conduct with incarcerated persons; (4) of a deliberate decision by the Sheriff or Department "made in the face of a persistent, widespread and longstanding pattern of like constitutional violations resulting from little or no investigation or perfunctory disciplinary action with regard to complaints of sexual assault"; and (5) connecting Wimbish's sexual misconduct with Longoria to any deficiency in the Department's practice of investigating similar claims or disciplining DSOs who engage in such conduct.

In response to the County's summary judgment motion, Plaintiff does not address the County's argument or evidence regarding her claim for section 1983 liability based on investigation and discipline.  Longoria instead focuses on her claim based on inadequate training, supervision, and monitoring.  Moreover, as previously noted, Plaintiff stated in response to the County's summary judgment motion that she is no longer pursuing a claim under section 1983 for inadequate investigation.  *See* Pl.'s Resp. 20 n.32 (Doc. 104).  The court, therefore, determines that Plaintiff has

abandoned her municipal liability claim under section 1983 based on inadequate investigation and discipline. Additionally, as discussed below, Plaintiff has not established a pattern of similar constitutional violations necessary for a finding of deliberate indifference or shown that any alleged inadequacies in the Sheriff's policies was the moving force behind her injury, and application of the single-incident exception is not appropriate under the facts of this case. Accordingly, the County is entitled to judgment as a matter of law on this claim.

### b.     Inadequate Training, Supervision, and Monitoring

Regarding Plaintiff's claim based on inadequate training, supervision, and monitoring, the County contends that, as it pertains to this case, "official policy" means a persistent, widespread practice of the Sheriff's Department, although not authorized by officially adopted and promulgated policy, which has over time become so common and well–settled as to constitute a practice that fairly represents County policy. The County contends that Plaintiff cannot establish that, as of September 11, 2012, the Sheriff's policy or practice of training DSOs and monitoring or supervising staff in the Jail was deficient in some particular way and that such deficiency had already caused a widespread, persistent and longstanding pattern of constitutional violations like Wimbish's violation of Longoria's Fourteenth Amendment right.

The County contends that, absent evidence of a pattern of similar incidents resulting from an unsanctioned practice, knowledge of the practice cannot be attributed to the Sheriff for purposes of satisfying the policy or deliberate indifference requirements, and isolated violations are insufficient to constitute a policy or practice. The County asserts that there is no evidence that the Sheriff's training, supervision, or monitoring was so cursory and devoid of thoroughness as to amount to no training, supervision, or monitoring. According to the County, Longoria instead relies

solely on the misconduct of Wimbish. The County maintains that, regardless of Longoria's contentions regarding the adequacy of training, there is no evidence that the absence of training resulted in a substantial and significant pattern of sexual contacts between Jail employees and incarcerated persons and was the moving force and direct cause of Wimbish's wrongful decision to engage in sexual conduct with Longoria while she was incarcerated.

For support, the County relies on the affidavit of Sheriff Valdez, in which the Sheriff states as follows regarding the Department's training, supervision, and monitoring policies and procedures, the training Wimbish received, and Wimbish's failure to comply with the Department's policy regarding female inmates: (1) Wimbish received the basic training for corrections officers that satisfied the TCLEOSE; (2) as part of that training, Wimbish was instructed regarding the circumstances that constitute violations of Texas criminal law by law enforcement officers, including improper sexual conduct that constitutes violations of sections 22.011 and 39.04 of Texas Penal Code; (3) Wimbish passed the requisite examinations given by TCLEOSE to be licensed as a law enforcement officer and work as a DSO in the Jail; (4) at the time relevant to this action, the Department had a written policy that requires a female officer to escort female inmates and, if no female officers are available, a female inmate must be escorted by two male officers; (5) Wimbish's conduct in escorting Longoria out of her cell by himself on September 12, 2012, violated the Department's policy; (6) the Department requires that every control center in the Jail be continuously manned and attended and, while officers assigned to the control center have other duties, it is their primary responsibility to monitor the video cameras located in strategic places in the Jail and control the entrance and exit of all persons entering and leaving the floor and "tank"; (7) at all times, there are at least two officers who make rounds and patrol the same areas being monitored by the control

center officer; and (8) during the daytime and in the infirmary area in the West Tower of the Jail, there are generally several officers and medical staff present who are attending to or transferring inmates from different floors, and all of these persons are in a position to observe activity between a guard and an inmate.  Sheriff Valdez further states that she is not aware of any incident, other than the one involving Wimbish and Longoria, where a single male DSO was able to remove a female inmate from a "tank" and engage in sexual conduct with the inmate without being observed by the Jail's control center or other Jail personnel.  In addition, the County presented evidence to show that, in 2011 and 2012, the Department complied with the minimum requirements of the Texas State Commission on Jail Standards in all material respects, including the standards for training officers and staffing levels for monitoring and supervision in the Jail.

Plaintiff responds that the policy requirement for municipal liability is satisfied because Sheriff Valdez admitted that the County has a training policy.  Plaintiff further asserts that there is "ample evidence" that the County's training policies regarding sexual contact between County personnel and inmates were inadequate.  Pl.'s Resp. Br. ¶¶ 3, 6, 9, 17.  Regarding the adequacy of the County's training, Plaintiff contends that, in enacting PREA, Congress imposed an affirmative duty on correctional facilities like the DCJ to protect incarcerated persons from sexual abuse by requiring that certain policies and training programs be put in place.  Plaintiff contends that Dallas County should have, but failed to establish better training programs in accordance with the standards set by PREA.

Based on the declaration of her expert, Michael L. Kenney ("Kenney"), Plaintiff asserts that, because the County did not provide PREA training or comparable training, its training policies were inadequate.  In addition, Plaintiff contends, based on a conclusory statement in Kenney's declaration,

**Memorandum Opinion and Order – Page 26**

that the County's training policies were inadequate because "there is none of the biennial training as required by law."  Pl.'s Resp. Br. 10 (quoting Pl.'s App. 3, Kenney Decl. ¶ 12).  Finally, Plaintiff contends that the County's training policies were inadequate because, while Wimbish was aware that a jailer was not supposed to have sex with  an inmate, he testified in his deposition that, "There was no training that . . . stated that you were not supposed to have sex with no one in jails."  Pl.'s Resp. Br. 10-11 (citation omitted).

Regarding deliberate indifference, Longoria again relies on PREA, contending that, in enacting PREA, Congress "found that current training programs regarding sexual assaults on inmates around the county were inadequate, [found that] any failure to take cost-effective steps to prevent prison sexual assaults constituted deliberate indifference, and identified specific training and other policies that are necessary to prevent the sort of assault [she] experienced here." *Id.* at 14.  Longoria contends that the Sheriff admitted being aware of PREA and, after the enactment of PREA, the County cannot reasonably claim it was unaware of the risk and need to implement "better training programs" to prevent sexual assaults in the Jail. *Id.* at 18. According to Longoria and her expert, the failure to implement PREA's standards is, therefore, evidence of the County's deliberate indifference to its constitutional obligation to take necessary measures to protect inmates from violence and sexual abuse.  Plaintiff likewise asserts that the County's deliberate failure to implement PREA's standards was the moving force behind the sexual assault she suffered while incarcerated.

i. *Inadequate Training, Supervision, and Monitoring Claim Based on a Pattern of Similar Violations*

In "limited circumstances," a municipality's failure to train its employees to avoid violating the rights of citizens may rise to the level of an official government policy for purposes of section

1983.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (citations omitted).  To hold a municipality liable under section 1983 based on a policy of failure to train or inadequate training, the plaintiff must prove: "1) the training . . . procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the . . . training policy, and (3) the inadequate . . . training policy directly caused the plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 385-87 (1989)); *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992).

Claims based on failure to supervise or inadequate supervision can similarly give rise to municipal liability under section 1983 when a municipality "supervises its employees in a manner that manifests deliberate indifference to the constitutional rights of citizens." *Taylor Indep. Sch. Dist.*, 15 F.3d at 453-54.   Failure to supervise claims are governed by the same deliberate indifference standard regardless of whether they are based on municipal liability or individual supervisory liability.[4]  *See id.* & n.8 (adopting the standard of municipal liability in *City of Canton* for supervisory liability).   Proof that a single constitutional violation resulted from inadequate training or supervision is ordinarily insufficient to hold a municipality liable for inadequate training or supervision. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998)).  The plaintiff must usually demonstrate a pattern of similar violations "to establish the official policy requisite to municipal liability under section 1983." *Id.* (citation omitted).  Only when a failure to train or supervise reflects a "deliberate" or

---

[4] Because Longoria's inadequate supervision claim under section 1983 is against the County, and she does not seek to hold Sheriff Valdez individually liable, the court applies the *City of Canton* standard for inadequate training in municipal liability cases.

**Memorandum Opinion and Order – Page 28**

"conscious" choice by a municipality can a county be liable for such a failure under section 1983. *See City of Canton*, 489 U.S. at 388. The need for more or different training or supervision must be "so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need," and "the failure to provide proper training [or supervision] may fairly be said to represent a policy for which the [county] is responsible." *Id.* at 390. Standing alone, an expert's opinion is generally insufficient to prove deliberate indifference when municipal liability is premised on alleged omissions. *Snyder*, 142 F.3d at 798.

There are a number of problems with Longoria's arguments and evidence in this case. As the court determines that Longoria's evidence is insufficient to establish a genuine dispute of material fact regarding the moving force requirement or the deliberate indifference requirement based on a pattern of similar constitutional violations, the court focuses on these issues, which are dispositive of Plaintiff's inadequate training, supervision, and monitoring claim, to the extent it is based on a pattern of similar constitutional violations.

Plaintiff contends and her expert expresses the opinion that the single-incident involving her and Wimbish, and the County's failure to detect or prevent it, demonstrates the County's deliberate indifference. Plaintiff and her expert further assert that the deficiencies in Wimbish's training and the County's policies for training, supervision, and monitoring demonstrate the County's deliberate indifference. As explained by the Court in *City of Canton*, however, "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program." *Id.* Evidence that Wimbish engaged in sexual conduct with Longoria one time while she was

incarcerated[5] is likewise insufficient because "proof of a single violent incident ordinarily is [not enough] to hold a municipality liable for inadequate training. The plaintiff must demonstrate 'at least a pattern of similar incidents in which the citizens were injured . . . to establish the official policy requisite to municipal liability under section 1983.'" *Snyder*, 142 F.3d at 798 (citation omitted).

Plaintiff attempts to satisfy her burden of demonstrating a pattern of similar constitutional violations based on the following argument:

> Longoria has also found through discovery numerous actual or suspected incidents of sexual contact or misconduct in the facilities in the five years prior to Longoria being assaulted by Wimbish. According to Mr. Kenney, who has reviewed the records produced by Dallas County, "the documents provided to me from Dallas County reveal numerous actual or suspected incidents of sexual contact or misconduct in the facilities in the five years prior to Ms. Longoria being assaulted." Significantly, "according to those same documents, not a single one of these incidents was identified or discovered by or through the monitoring programs and policies that were in place."

> The documents also reveal that reports of these incidents were communicated up the chain of command all the way to the Sheriff herself. As Mr. Kenney explains, this evidence demonstrates that "Dallas County Jail leadership was aware that sexual misconduct was occurring that was not being caught by the monitoring program in place." The evidence of multiple incidents that were not detected by the monitoring system shows that "long before Ms. Longoria was assaulted after being led through a purportedly monitored area by a single male escort without any monitoring discovering the incident, the leadership was undoubtedly aware that its monitoring programs and policies were not working." Mr. Kenney opines that keeping the obviously inadequate monitoring policies and programs in place is evidence of "deliberate indifference to the possibility that inmates under their protection could be subject to sexual assault or other sexual misconduct." Mr. Kenney goes on to opine that "such potential for sexual assaults is necessarily a known and obvious consequence of a monitoring policy and program that clearly has not been successful in preventing or even identifying after the fact such incidents of sexual misconduct."

---

[5] Plaintiff's expert concludes in his declaration that Wimbish's noncompliance with the County's policy regarding male employees escorting female prisoners, the County's failure to enforce this policy in this instance, and the failure of the County's monitoring system to detect Wimbish escorting Longoria on the date in question without another male guard in violation of the County's policy demonstrates the County's deliberate indifference. Pl.'s App. 7 (Kenney Decl. ¶ 22).

**Memorandum Opinion and Order – Page 30**

Pl.'s Resp. Br. 21-22.  To support this argument, Longoria relies entirely on the declaration provided by her expert, and, in particular, paragraph 21 of that declaration.

Kenney states in his declaration that he personally reviewed over 2,300 pages of documents produced by Dallas County in this case, as well as Longoria's jail records and Dallas County's summary judgment motion.  In paragraph 21 of his declaration, Kenney states as follows regarding the documents he reviewed:

> The documents provided to me from Dallas County reveal numerous actual or suspected incidents of sexual contact or misconduct in the facilities in the five years prior to Ms. Longoria being assaulted. Yet, according to those same documents, not a single one of these incidents was identified or discovered by or through the monitoring programs and policies that were in place. The documents also reveal that reports of these incidents were communicated up the chain of command all the way to the Sheriff herself. It is clear that Dallas County Jail leadership was aware that sexual misconduct was occurring that was not being caught by the monitoring program in place. Long before Ms. Longoria was assaulted after being led through a purportedly monitored area by a single male escort without any monitoring discovering the incident, the leadership was undoubtedly aware that its monitoring programs and policies were not working. Nevertheless, the leadership kept those completely inadequate policies and programs in place with deliberate indifference to the possibility that inmates under their protection could be subject to sexual assault or other sexual misconduct. Such potential for sexual assaults is necessarily a known and obvious consequence of a monitoring policy and program that clearly has not been successful in preventing or even identifying after the fact such incidents of sexual misconduct.

Pl.'s App. 7 (Kenney Decl. ¶ 21).  This paragraph in Kenney's declaration is the only evidence that Plaintiff points to in response to the County's summary judgment motion to establish a pattern of similar constitutional violations.

The County objects and contends that Plaintiff's reliance on her expert's testimony and her filtering of evidence through her expert to raise a fact issue is improper because these and other statements in Kenney's declaration regarding the alleged inadequacy of the Sheriff's training and

**Memorandum Opinion and Order – Page 31**

monitoring program and the consequences of those deficiencies are conclusory, and neither Plaintiff nor Kenney identifies a single document out of the 2,300 pages of documents reviewed by Kenney or the 397 pages included in Plaintiff's appendix to support Kenney's conclusory statements.  In addition, the County contends that "Longoria relies solely on her expert to establish 'deliberate indifference,' which she may not do."  Def.'s Reply 4 (citing *Conner v. Travis*, 209 F.3d 794, 798 (5th Cir. 2000); and *Snyder*, 142 F.3d at 799.

The County is correct. Longoria relies heavily on her expert's declaration to establish deliberate indifference; however, an expert's opinion, standing alone, is generally insufficient to prove deliberate indifference when municipal liability is premised on alleged omissions. *Id.* at 798. Moreover, this and other portions of Kenney's declaration is replete with unsupported conclusory statements and opinions.  For example, Kenney concludes that the documents he reviewed "reveal numerous actual or suspected incidents of sexual contact or misconduct in the facilities in the five years prior to Ms. Longoria." Pl.'s App. 7 (Kenney Decl. ¶ 21).  This statement, which is presented in the form of an opinion, is conclusory, in that it lacks a factual basis, and none of the documents that purportedly reveal the numerous incidents alluded to in Kenney's declaration were submitted in support of Plaintiff's response to the County's summary judgment motion.  Consequently, the court has no way to verify what Kenney says about the content of the documents to determine the numerosity of incidents, whether the incidents occurred at the DCJ as opposed to other "facilities,"[6] and whether the incidents are sufficiently similar enough to the constitutional violation in this case.

---

[6] Kenney uses the term "facilities" in paragraph 21 of his declaration.  He uses this same term in other areas of his declaration to refer to facilities other than DCJ, so it is unclear whether his use of the word facilities in paragraph 21 refers to incidents that occurred in the DCJ or other correctional facilities.

Absent such evidence, the conclusory statements in Kenney's declaration are insufficient to demonstrate a pattern of similar violations in the Jail before the incident with Longoria or that the Sheriff had actual or constructive knowledge of the allegedly rampant problem in the Jail regarding DSOs having sexual contact with persons incarcerated in the DCJ. Kenney's conclusory statements and opinions are also insufficient to rebut the County's evidence that, in the three years preceding the incident in this case, only three instances of sexual misconduct between jailers and persons incarcerated in the DCJ were reported, and only one of those instances was substantiated. *See* Def.'s App. 3-4, 8-16; *Roberts v. City of Shreveport*, 397 F.3d 287, 294 (2005) (concluding that the plaintiffs' evidence of pattern, which was based on an "excessively high level of generality" and consisted of only "a handful of tangentially related incidents" was insufficient to demonstrate a pattern of unconstitutional conduct).

Kenney states in his declaration that he has 37 years of experience working in a variety of correctional facility positions, and a copy of his curriculum vitae is attached to his declaration; however, "[w]ithout more than credentials and a subjective opinion, an expert's opinion that 'it is so' is not admissible" because "subjective opinion, unrooted in factual foundation or proven expertise" amounts to nothing more than "pure speculation." *Benavides*, 955 F.2d at 974 (citations and internal quotation marks omitted); *see also Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (explaining that a genuine dispute of material fact precluding summary judgment is not created by "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence"). Although Kenney's curriculum vitae establishes that he has extensive experience working in adult correctional facilities in various capacities, it does not demonstrate that he has any specialized knowledge, whether based on work

experience, training, or education, that is sufficiently related to the specific area at issue in this case (training, supervision, and monitoring in adult correctional facilities necessary to prevent jailers from engaging in sexual contact or misconduct with incarcerated persons) to support the opinions in his declaration that he asserts are based on his experience, training, and education.  *See United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013) (explaining that, regardless of its source, "the [expert] witness's . . . specialized knowledge," must be "sufficiently related to the issues and evidence before the trier of fact that the witness's proposed testimony will help the trier of fact.") (citation omitted).   Additionally, Kenney does not explain how his experience leads to the conclusions reached, why that experience is a sufficient basis for his opinions, and how that experience is reliably applied to the specific facts in this case.[7]

To establish deliberate indifference, Plaintiff also presented the deposition testimony of Executive Deputy Sheriff Flores who agreed that "an obvious consequence of inadequate monitoring was that an inmate might be sexually assaulted."  Pl.'s Resp. Br. 22.  According to Plaintiff, this evidence demonstrates that the "Dallas County Jail leadership was aware of sexual misconduct occurring at the Jail that was not being caught by its monitoring program."  *Id.*  Deputy Sheriff Flores, however, did not testify that Dallas County was aware that its own monitoring program was not detecting sexual misconduct; nor did he testify that Dallas County had failed to adequately monitor activity in the Jail. He merely agreed with the following general propositions offered by Plaintiff's counsel:

---

[7] The Advisory Committee's Notes to Federal Rule of Civil Procedure 702 explain that when a "witness relies solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's notes (2000 amendments). This is because the "trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir.1994)).

**Memorandum Opinion and Order – Page 34**

Q. You would agree that an obvious consequence of failing to adequately monitor activity between DSOs and inmates is that an inmate may be harmed, right?
A. Yes, sir.

Q. And you would agree that the obvious consequence of failing to adequately monitor activity between a DSO and an inmate would be that an inmate may be sexually assaulted, right?

A. Yes, sir.

Pl.'s App. 359. Further, Deputy Sheriff Flores's testimony does not establish a pattern of similar constitutional violations.

Finally, Plaintiff's inadequate training, supervision, and monitoring claim based on Kenney's declaration and PREA is fundamentally flawed, as it is based on the faulty assumption that, with respect to state and local facilities, the standards established by PREA are "mandatory requirements." Pl.'s App. 3.  While it is true that PREA was enacted in an effort to reduce the occurrence of rapes in prisons by developing and implementing national standards and "increas[ing] the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape," nowhere in PREA is there language to suggest that it was created to provide a private cause of action or a federal right that could be enforced in a section 1983 action.  *See* 42 U.S.C. §§ 15602, 15605; *Krieg v. Steele*, 599 F. App'x 231, 232-33 (5th Cir. 2015) (concluding that PREA does not create a private cause of action). Plaintiff maintains that she is not asserting a cause of action for violations of PREA, but by contending that the County had an affirmative duty to implement PREA standards for training, supervising, and monitoring Jail personnel and is liable for failing to comply with PREA, Plaintiff is doing just that.  Labeling her claim as one for constitutional violations under section 1983 does not make her claim based on PREA noncompliance any more viable because, as the County aptly notes, "Total compliance with PREA is not required to avoid Section 1983 liability. . . . Mere

differences between how the County prevents sexual assault and how PREA does so are irrelevant to the legal requirements [under section 1983] necessary to hold the County liable for the conduct of its employee, Wimbish." Def.'s Reply 5.

Moreover, contrary to Plaintiff and her expert, state and local compliance with PREA's standards is entirely voluntary, not mandatory,[8] and Longoria has not presented any authority or evidence to show that the state of Texas has agreed to adopt and implement PREA's training, supervision, or monitoring standards with respect to adults incarcerated in Texas correctional facilities, and the court is aware of no such authority. Thus, the court disagrees with Plaintiff's assertion and her expert's conclusion that mere noncompliance with PREA is evidence that the Sheriff's policies for the training, supervision, and monitoring of Jail personnel are per se inadequate or evidence of deliberate indifference, notwithstanding the County's evidence regarding the Department's compliance with the Texas Commission on Jail Standards, the TCLEOSE training provided to DCJ officers that included instructions regarding prohibited sexual conduct with inmates, and the policies and procedures in place for monitoring activity in the Jail, including those applicable to female inmates or detainees. *See Benavides v. County of Wilson*, 955 F.2d at 974 (rejecting "a per se rule that a county is deliberately indifferent to its jailers' and peace officers' training whenever it relies exclusively on state certification requirements to ensure that its deputies are adequately trained.").

---

[8] *See* National Standards to Prevent, Detect, and Respond to Prison Rape: Final Rule, 77 Fed. Reg. 37,106, 37,196 (June 20, 2012) (to be codified at 28 C.F.R. pt. 115) ("[W]ith respect to the thousands of State and local agencies, and private companies, that own and operate confinement facilities across the country, PREA provides the Department [of Justice] with no direct authority to mandate binding standards for their facilities. Instead, PREA depends upon State and local agencies to make voluntary decisions to adopt and implement them.").

**Memorandum Opinion and Order – Page 36**

Plaintiff's reliance on congressional findings with respect to PREA that, "current training programs regarding sexual assaults on inmates around the county [are] inadequate" and "failure to take cost-effective steps to prevent prison sexual assaults constitute[s] deliberate indifference," Pl.'s Resp. Br. 1-2, is similarly misguided, as these findings are general in nature and do not specifically address the adequacy of the County's specific policies or facts that would support a deliberate indifference finding in this case. *See* 42 U.S.C. §§ 15601 (Findings). In *City of Canton*, the Supreme Court explained that, in analyzing the adequacy of a municipality's training policy and determining whether the municipality was deliberately indifferent in not taking reasonable steps to train its employees, the focus is on the adequacy of a *particular* training program in relation to the tasks or duties assigned to *particular* officers, not the general adequacy of training programs across the country. *City of Canton*, 489 U.S. at 390-91 (footnote and citations omitted). Because PREA's findings are general in nature and do not specifically address Dallas County's policies for training or monitoring in relation to the tasks or duties assigned to DSOs in the Jail, and Longoria points to no authority to show that the enactment of PREA changed the analysis for municipal liability under section 1983, the court disagrees with her assertion that PREA's general findings combined with a failure to implement PREA standards is sufficient to demonstrate deliberate indifference to trigger municipal liability for inadequate training or supervision. Plaintiff's argument regarding the effect of PREA on municipal liability is simply untenable and not supported by legal authority.

Plaintiff's related assertion that Dallas County could have and should have implemented "better" or "additional training programs"[9] given PREA's enactment and Congress's findings regarding the general inadequacy of correctional facilities across the country is unavailing for the

---

[9] *See* Pl.'s Resp. Br. ¶¶ 3, 13, 15, 16, 18.

**Memorandum Opinion and Order – Page 37**

same reason, as the Court in *City of Canton* held that proof that an injury "could have been avoided if an officer had better or more training" is insufficient to establish inadequate training because "[s]uch a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program" under which the officers are operating. *Id.* at 391 (citation omitted). Accordingly, Longoria's and Kenney's reliance on PREA to establish the requirements for a claim based on inadequate training, supervision, and monitoring is fatal to Longoria's argument and Kenney's opinion that the County's policies and procedures for training, supervising, and monitoring Jail personnel, and in particular DSOs, were inadequate at the time in question, and the County was deliberately indifferent to obvious inadequacies in its policies.   Moreover, there is nothing in Kenney's declaration from which the court can reasonably infer that PREA was recognized as the accepted industry standard among professionals in his field at the time in question, such that all state and local standards for training and monitoring are judged against it.

Thus, Longoria's evidence, whether considered individually or taken as a whole, is not sufficient to create a genuine dispute of material fact regarding deliberate indifference or knowledge on the part of the Sheriff that sexual misconduct by a DSO with an inmate or detainee in the Jail would likely result because the County's policies for training, supervising, or monitoring DSOs were inadequate.  Proof of "moving force" causation is similarly absent, and evidence that Wimbish had sexual contact with Longoria despite knowing that he was not supposed to have sexual contact with Jail inmates essentially eviscerates Plaintiff's argument that any alleged inadequacy in the County's policies or procedures for training, supervision, or monitoring was the moving force behind her injury as opposed to Wimbish's impulsive behavior and decision to engage in conduct that he knew

was wrong.  In other words, since Wimbish knew he was not to have sex with Longoria, inadequacy of any policy or custom, or the failure to have a policy, is quite beside the point.

ii.    *Inadequate Training, Supervision, and Monitoring Claim Based on Single-Incident Exception*

Based on *Bryan County v. Brown*, 520 U.S. 397 (1997), Longoria contends that, even if the evidence is insufficient to establish a pattern of constitutional violations, she has a plausible inadequate training claim[10] against the County under the single-incident exception for municipal liability.

In *Bryan County v. Brown*, the Supreme Court clarified previous decisions that allowed, in limited circumstances, a single act by a municipal employee to form the basis of municipal liability apart from a pattern of unconstitutional activity, and concluded that the evidence in that case did not support application of the exception.  *See id.* at 409-411.  This exception recognizes that a plaintiff can establish deliberate indifference by "showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge*, 336 F.3d at 373 (quoting *McClendon v. City of Columbia*, 258 F.3d 432, 442 (5th Cir. 2001)).  The single-incident exception allowing municipal liability without proof of a pattern of constitutional violations is a "narrow" one, and the Fifth Circuit, in conformity with Supreme Court jurisprudence, has been wary to expand the application of the exception out of concern that it would swallow the rule that precludes respondeat superior liability.  *Roberts*, 397 F.3d at 295; *Burge*, 336 F.3d at 373 (citation omitted); *Pineda v. City of Houston*, 291 F.3d 325, 334-35 (5th Cir. 2002) ("Charged to

---

[10] Longoria appears to limit her discussion of the single-incident exception to her inadequate training claim, but the court assumes, out of an abundance of caution, that her references to failure to train in discussing this exception include her claim for inadequate supervision and monitoring.

**Memorandum Opinion and Order – Page 39**

administer a regime without respondeat superior, we necessarily have been wary of finding municipal liability on the basis of [the single-incident] exception for a failure to train claim.")).  For this exception to apply, Longoria must prove, or raise a genuine dispute of material fact, that the specific violation or injury that she suffered was the "highly predictable consequence" of a particular County policy or its failure to train Wimbish, and that the policy or failure to train Wimbish was the "moving force" behind the constitutional violation.  *Roberts*, 397 F.3d at 295 (quoting *Brown v. Bryan Cnty.*, 219 F.3d 450, 461 (5th Cir. 2000)).

Longoria asserts that application of the exception in this case is appropriate based on her contention that Dallas County's failure to implement better training standards with respect to sexual assaults constitutes deliberate indifference "because PREA establishes the necessary connection between inadequate training and the violation of [her] rights."  Pl.'s Resp. Br. 13. Longoria further asserts that "PREA standards also establish the requisite proof of the possibility of recurring violations of constitutional rights."  *Id.*  According to Longoria, "After PREA, at the very least, there are genuine disputes of fact regarding whether the sexual assault suffered by her was a highly predictable or patently obvious risk of the County not having a better training program."  *Id.*

For the reasons already explained, the court disagrees that the mere enactment of PREA and the standards created by that statute give rise to municipal liability under section 1983.  Moreover, it is not reasonably inferable from PREA's enactment or the evidence in this case that Wimbish's sexual misconduct with Longoria while she was incarcerated in the DCJ was a highly predictable consequence of a particular County policy or any failure by the Sheriff's Department to train, supervise, or monitor its DSOs who worked in the Jail.  Unlike the facts of *Bryan County*, there is no evidence in this case that Wimbish previously engaged in sexual misconduct with inmates or

detainees while they were incarcerated at the DCJ.  Unlike the deputy in *Bryan County* who received "*no* training whatsoever," *Roberts*, 397 F.3d at 295, the evidence in this case demonstrates that Wimbish received the basic training for corrections officers that satisfied the TCLEOSE, and, as part of that training, he was instructed regarding the circumstances that constitute violations of Texas criminal law by law enforcement officers, including improper sexual conduct that constitutes violations of sections 22.011 and 39.04 of Texas Penal Code. The Department also had monitoring and supervision policies and procedures in place at the Jail, including policies to monitor activity in the Jail by video camera and other means and a procedure for escorting female inmates and detainees.  In addition, the County presented evidence regarding the Department's compliance with requirements of the Texas State Commission on Jail Standards.  Further, for the reason previously explained, Plaintiff's evidence is insufficient to raise a genuine dispute of material fact regarding the "moving force" requirement for municipal liability, whether under a pattern or single-incident theory of liability.

Thus, neither the "unmistakable culpability" of the County nor the "clearly connected causation" required by *Bryan County*, is present in this case, and application of the single-incident exception in not appropriate.  *Bryan County*, 219 F.3d at 461.  Longoria is, therefore, left with the burden of establishing deliberate indifference through proof of a pattern of similar violations, but, as previously explained, she has failed to satisfy this burden.  *See Burge*, 336 F.3d at 373.  Because Longoria failed to establish a pattern of similar violations sufficient to demonstrate deliberate indifference, her claim against Dallas County under section 1983 based on inadequate training, supervision, and monitoring fails as a matter of law, and the County is entitled to judgment on this claim.

### E.      Dallas County's Summary Judgment Motion (Alternate Section 1983 Theories)

In addition to seeking summary judgment on Longoria's municipal liability claim under section 1983, the County also moved for summary judgment on the following alternative theories relied on by Longoria: (1) conditions of confinement; (2) episodic acts or omissions; and (3) state-created danger.  Rather than repeat the legal arguments set forth in its motion for judgment under Rule 12(c), the County incorporated by reference these arguments in its summary judgment motion. *See* Def.'s Summ. J. Mot. 2 (Doc. 96).  The court will deny as moot the County's summary judgment motion as to these claims, to the extent based on conditions of confinement and state-created danger, as it has already determined that the County is entitled to judgment under Rule 12(c) on Plaintiff's claim under section 1983 based on these theories.  The court will deny the County's summary judgment motion regarding Plaintiff's claim under section 1983 based on an episodic acts or omissions theory because, as previously explained, the County's Rule 12(c) motion mentions Plaintiff's claim based on episodic acts or omissions, but the County did not specifically move for judgment on this claim or explain why judgment on this claim is appropriate, and no further argument or evidence was provided in the County's summary judgment motion regarding this claim. Accordingly, Plaintiff's claim under section 1983 based on an episodic acts or omissions theory remains for trial.

## IV.      Conclusion

For the reasons stated, the court **grants in part and denies in part** Defendant Dallas County's Motion for Judgment on the Pleadings (Doc. 70); **grants in part and denies in part** Defendant Dallas County's Motion for Summary Judgment (Doc. 96); and **grants** Defendant Richie

Ladone Wimbish's Motion for Summary Judgment (Doc. 61) but will allow Plaintiff to amend her pleadings with respect to Wimbish.

Regarding Defendant Dallas County's Motion for Judgment on the Pleadings (Doc. 70), the court **concludes** that Dallas County is entitled to judgment as a matter of law under Rule 12(c) with respect to Plaintiff's claim under section 1983 based on theories of conditions of confinement and state-created danger but not Plaintiff's theory based on episodic acts or omissions. Accordingly, the court **grants** Defendant Dallas County's Motion for Judgment on the Pleadings (Doc. 70) with respect to Plaintiff's claim under section 1983 based on conditions of confinement and state-created danger theories and **dismisses with prejudice** these claims. Defendant Dallas County's Motion for Judgment on the Pleadings (Doc. 70) is otherwise **denied**.[11]

With respect to Defendant Dallas County's Motion for Summary Judgment (Doc. 96), the court **concludes** that no genuine dispute of material fact exists as to the elements of Plaintiff's constitutional claim under section 1983 based on municipal liability. Accordingly, the court **grants** Dallas County's Motion for Summary Judgment (Doc. 96) as to Plaintiff's constitutional claim under section 1983 based on municipal liability and **dismisses with prejudice** this claim. The court's dismissal under Rule 12(c) of Plaintiff's claim under section 1983 based on theories of conditions of confinement and state-created danger moots Dallas County's summary judgment motion as to these claims, and the motion is **denied as moot** with respect to these claims. Although the County moved for summary judgment on Plaintiff's claim under section 1983 based on episodic acts or omissions, no factual or legal basis for dismissing this claim was provided by the County in its

---

[11] The County's Rule 12(c) motion with respect to municipal liability under section 1983 is moot in light of the court's ruling on its summary judgment motion, and is thus **denied as moot** with respect to this claim.

summary judgment motion or its Rule 12(c) motion, which was incorporated by reference in its summary judgment motion.  The court, therefore, **denies** the County's summary judgment motion as to this claim.

With respect to  Defendant Richie Ladone Wimbish's Motion for Summary Judgment (Doc. 61), the court **concludes** that Plaintiff's tort claim under Texas law for IIED fails as a matter of law, as it is barred under Texas's gap-filler doctrine.  Accordingly, the court **grants** Defendant Richie Ladone Wimbish's Motion for Summary Judgment (Doc. 61) and **dismisses with prejudice** Plaintiff's IIED claim. The court, however, for the reasons previously stated, **grants** Plaintiff's request to amend her pleadings to assert a civil cause of action or actions for assault or sexual assault against Wimbish.

Plaintiff's claim against the County under section 1983 based on episodic acts or omissions remains for trial, as will any assault claim asserted by Plaintiff against Wimbish in an amended pleading.  Any amended complaint by Plaintiff must be filed by **March 27, 2017.**  No new factual allegations will be permitted.  To avoid confusion, the only permissible amendment shall be to the causes of action asserted by Plaintiff against Wimbish.  Specifically, Plaintiff may only amend her pleadings to clarify that she is asserting one or more assault-based claims against Wimbish, rather than IIED.  Any amended answer and affirmative defenses by Wimbish to the amended complaint must be filed by **April 6, 2017**, **or ten calendar days after Plaintiff files her amended pleadings, whichever is earlier.  Given the age of this case, no further extensions of time will be granted absent good cause.**

As the amendments to Plaintiff's pleadings are limited to her claims against Wimbish, there should be no reason for Dallas County to further amend its answer.  Accordingly, no further

amendment in this regard by Dallas County will be permitted absent leave of court and good cause shown.  Additionally, given the age of this case, the court will not allow the parties to file any further dispositive motions, and this case will be tried in July, August, or September of this year. By **April 10, 2017**, the parties shall file a joint notice that includes a week in each of the these three months during which all parties are available to try this case.  By separate order, the court will enter an amended scheduling order that includes deadlines for filing pretrial materials, a pretrial conference date, and a trial setting after the parties file their joint notice of availability for trial.

**It is so ordered** this 13th day of March, 2017.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 45**